[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 07-11958

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEB 12, 2009
THOMAS K. KAHN
CLERK

D.C. Docket No. 05-22594-CV-STB

RICHARD OLDFIELD,

Plaintiff-Appellee,

versus

PUEBLO DE BAHIA LORA, S.A.,
d.b.a. Parrot Bay Village,
IFFY IFFY DE OSA, S.A.,

Defendants-Appellants.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(February 12, 2009)**

Before TJOFLAT, MARCUS and WILSON, Circuit Judges.

TJOFLAT, Circuit Judge:

This appeal challenges a district court order denying a motion to set aside a

default judgment. The appellants contend that the judgment is void because the district court lacked jurisdiction over their persons. We agree and accordingly vacate the judgment and remand with the instruction to dismiss the case.

I.

A.

Pueblo De Bahia Lora, S.A., is a Costa Rican corporation[1] owned by two United States citizens and residents, Sean Weaver and Arthur Augustensen.[2] The corporation owns and operates a fishing village and resort in Costa Rica named "Parrot Bay Village."

Richard Oldfield, is a resident of Port St. Lucie, Florida. In January 2005, while searching the internet at his home, Oldfield came across the website for Parrot Bay Village. The website, whose text was entirely in English, described the resort as both a "full service resort" and a "unique sport fishing and rainforest eco-lodge."[3] The site listed the Village's mailing address as 2040 Hwy 35 Suite 3

---

[1] Under Costa Rican law, a corporation's name may be expressed in either Spanish, Latin, or Greek, although fantasy names are allowed. The corporation's name must be followed by the expression "Sociedad Anonima" or its abbreviation, "S.A."

[2] Augusten resides in New Jersey, while Weaver, who formerly resided in New Jersey, currently resides in South Carolina.

[3] The website described the resort, as follows:

Parrot Bay Village is full service, soup to nuts.

2

#190, Wall, NJ 07719,[4] and offered a toll-free number that potential guests could use to call the resort from within the United States and instructions on how to configure cell phones bought and used in the United States.

Intrigued by the services and amenities offered by the resort, Oldfield submitted an online reservation request through the Parrot Bay Village website,[5] which he later confirmed in an email to the resort on January 10. In the exchange that followed, Oldfield submitted a credit card authorization form to secure a room for three nights at the resort, March 4-7. He also made arrangements with a charter service for a one-day fishing trip on March 6. Oldfield was injured while aboard the chartered boat,[6] and that injury is the subject of this litigation.

### B.

On September 28, 2005, Oldfield filed a single-count complaint against

---

With custom sport fishing boats and packages for serious fisherman, excellent land based adventures and eco-tours for families with kids, full day and overnight trips for naturalists or[,] for the more hardy[,] three to five day rainforest/jungle hikes repelling down waterfalls.

Parrot Bay Village, i.e., Pueblo De Bahia Lora, S.A., did not own or operate any fishing boats or other seafaring vessels. It represented, though, that the fishing boats it chartered were captained by "U.S. licensed" captains.

[4] The address was for a rented mailbox in a "pack and mail" store.

[5] The record indicates that virtually all of Parrot Bay Village's reservations are initiated through its website.

[6] The boat was registered to Puerto Jimenez Charter Boats, a Costa Rican corporation.

Pueblo De Bahia Lora, S.A., d/b/a Parrot Bay Village ("Pueblo" or "Parrot Bay Village"),[7] in the United States District Court for the Southern District of Florida, claiming that the boat captain's negligence caused his injury and that Pueblo was legally responsible for the captain's neglect.[8] Oldfield invoked the district court's subject-matter jurisdiction on two bases. The first was diversity jurisdiction, under 28 U.S.C. § 1332.[9] Oldfield alleged that he was a citizen of Florida, that Parrot Bay was a Costa Rican corporation with offices in New Jersey, and that the amount in controversy exceeded the sum of $75,000. The second was the court's

---

[7] The complaint named Iffy Iffy de Osa, S.A. ("Iffy"), a Costa Rican corporation, as co-defendant. From all we can discern from the record, this corporation did not own the Parrot Bay Village resort at the time of the event that gave rise to this litigation; it already had sold the resort to Pueblo. Nonetheless, the district court entered judgment against Iffy as well as Pueblo. In this opinion, we treat the two defendants collectively as Pueblo or Parrot Bay Village.

[8] Oldfield alleged that the captain negligently ran the boat into rough seas at excessive speeds, causing Oldfield to be thrown from where he was seated and to sustain serious injuries to his back.

[9] 28 U.S.C. § 1332, provides in relevant part,

The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between--

(1) citizens of different States;

(2) citizens of a State and citizens or subjects of a foreign state

4

admiralty jurisdiction, under 28 U.S.C. § 1333.[10] Oldfield alleged that the events surrounding and giving rise to his injuries occurred at sea and had the requisite nexus to maritime activity. Oldfield averred that the court had personal jurisdiction over the defendants under the Florida Long-Arm Statute, Fla. Stat. § 48.193, because Pueblo was engaged in business within the state of Florida.[11]

After receiving an extension of time to complete service, Oldfield filed a notice with the district court on March 9, 2006, stating that Pueblo had been successfully served with process on February 7, 2006. On March 29, 2006, Oldfield filed a motion for the entry of a default pursuant to Federal Rule of Civil Procedure 55(a), and the clerk of court entered a default on April 4, 2006. On

---

[10] 28 U.S.C. § 1333, provides, in relevant part,

The district courts shall have original jurisdiction, exclusive of the courts of the States, of:

> (1) Any civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled.

[11] The Florida Long Arm Statute, Fla. Stat. § 48.193, provides, in relevant part,

Any person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself and, if he or she is a natural person, his or her personal representative to the jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following acts:

(a) Operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state.

5

June 28, 2006, the district court, acting on Oldfield's motion, entered a default judgment pursuant to Federal Rule of Civil Procedure 55(b) in the amount of $810,895.94.[12]

Following the court's entry of judgment, Pueblo moved the district court, pursuant to Federal Rule of Civil Procedure 60(b)(4),[13] to set aside the default judgment on the ground that the court lacked personal jurisdiction.[14] Pueblo argued that exercising jurisdiction under the Florida Long-Arm Statute was improper because it did not conduct or engage in business within the state.[15] Pueblo claimed that it (1) did not maintain an office in Florida, (2) did not have employees or agents in Florida, (3) did not own real estate in Florida, and (4) did not provide any services in Florida or solicit business in Florida. Pueblo further

---

[12] Oldfield's motion sought damages totaling $750,000, and prejudgment interest and costs in the sum of $60,895.94. The district court granted the motion, relying for its damages calculation on affidavits and other supporting documents presented by Oldfield.

[13] Rule 60(b)(4) provides that "[o]n motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding [if] . . . the judgment is void[.]" In general, "a judgment is void under Rule 60(b)(4) if the court that rendered it lacked jurisdiction of the subject matter, or of the parties, or if it acted in a manner inconsistent with due process of law." Burke v. Smith, 252 F.3d 1260, 1263 (11th Cir. 2001) (citation omitted).

[14] Federal Rule of Civil Procedure 55(c), which governs the procedures related to the entry of default judgments, provides that "[t]he court may set aside an entry of default for good cause, and it may set aside a default judgment under Rule 60(b)."

[15] Pueblo also asserted that it had not been served with process. Service of process, however, is not an issue in this appeal.

6

noted that the alleged injury occurred aboard a fishing boat that it neither owned nor operated. Moreover, the captain's negligence and Oldfield's injury had occurred off the coast of Costa Rica and, thus, had no relationship with Florida.

Oldfield countered Pueblo's motion with the argument that the district court had personal jurisdiction under the Florida Long-Arm Statute because (1) the boat involved in the accident, although not owned or operated by Pueblo, was purchased in Florida, (2) Oldfield viewed the Parrot Bay Village website while in Florida, and (3) Parrot Bay Village sponsored and participated in an event in Islamorada, Florida in 2005 for a women's organization called "Ladies Let's Go Fishing." These acts, he submitted, amounted to conducting business within Florida.

As an alternative basis for personal jurisdiction, Oldfield relied on Federal Rule of Civil Procedure 4(k)(2),[16] which, in cases where a defendant is not subject

---

[16] Rule 4(k)(2) provides as follows:

Federal Claim Outside State-Court Jurisdiction. For a claim that arises under federal law, serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant if:

(A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and

(B) exercising jurisdiction is consistent with the United States Constitution and laws.

7

to jurisdiction in any state's courts of general jurisdiction, authorizes a district court to "aggregate a foreign defendant's nationwide contacts to allow for service of process provided that two conditions are met: (1) plaintiff's claims must 'arise under federal law,' and (2) the exercise of jurisdiction must 'be consistent with the Constitution and laws of the United States.'" Consol. Dev. Corp. v. Sherritt, Inc., 216 F.3d 1286, 1291 (11th Cir. 2000) (quoting Fed. R. Civ. P. 4(k)(2)). Oldfield argued that since his injury occurred on the high seas and had a nexus with maritime activity the rule's first condition was satisfied because his claim arose under maritime law. He argued that the second condition was satisfied as well because Pueblo had established continuous and systematic contacts within the United States. As factual bases for these claims, in addition to those he had previously cited, Oldfield pointed to the following contacts Pueblo had with the United States: Pueblo had a New Jersey mailing address from approximately 2001-2002; had a bank account in New Jersey, which was closed on August 31, 2005, that was used to purchase goods and pay bills for advertising;[17] advertised in "Fisherman" magazine in 2004-2005 for the months of December, January, and February; distributed cards and brochures in New Jersey and South Carolina; and

---

[17] The Manasquan Savings Bank account listed the address for Parrot Bay Village as 408 Ashley Avenue, Brielle, New Jersey (Augustensen's home address) and was used to purchase fishing tackle and pay the resort's phone and advertising bills until the account was closed.

donated a trip to the resort as part of a fundraiser for New Jersey's Recreational Fishing Alliance.

In its reply, Pueblo did not challenge Oldfield's factual assertions; rather, it argued that, as a matter of law, the facts failed to establish that it was within the reach of the Florida Long-Arm Statute or Rule 4(k)(2).

Because the material facts relating to the personal jurisdiction issues were not in dispute, there was no need for an evidentiary hearing. Accordingly, after hearing argument of counsel, the court issued its ruling. In an order entered on March 27, 2007, the district court denied Pueblo's motion to vacate the default judgment. It held that, although Pueblo lacked sufficient contacts with Florida to satisfy its long-arm statute, Pueblo was amenable to personal jurisdiction under Rule 4(k)(2) because the rule's conditions had been met. First, Oldfield's claim arose under maritime law because the injury occurred on navigable waters and the claim had a sufficient nexus with maritime activity. Second, Pueblo's activities in the United States demonstrated that Pueblo had purposefully established minimum contacts with the United States, such that the exercise of specific personal jurisdiction would not offend constitutional due process.[18]

---

[18] Pueblo failed to identify any other state where it would be amenable to suit, and the district court did not make a ruling on whether Pueblo was indeed subject to jurisdiction in the courts of general jurisdiction of another state.

Pueblo now appeals the district court's decision, presenting one issue: whether the district court erred in finding that Pueblo's contacts with the United States were sufficient to satisfy Rule 4(k)(2)'s second requirement, that the court's exercise of personal jurisdiction is "consistent with the Constitution and laws of the United States."

## II.

It goes without saying that, where the defendant challenges the court's exercise of jurisdiction over its person, the plaintiff bears the ultimate burden of establishing that personal jurisdiction is present.[19] See e.g., Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino, 447 F.3d 1357, 1360 (11th Cir. 2006). We have consistently held that the issue of whether personal jurisdiction is present is a question of law and subject to de novo review. Sculptchair, Inc. v. Century Arts, Ltd., 94 F.3d 623, 626 (11th Cir. 1996).[20] This standard applies whether the issue is raised by way of a motion to dismiss under Federal Rule of Civil

---

[19] The district court must resolve the challenge—on the pleadings, if possible, or following an evidentiary hearing before the bench or, depending on the circumstances, at trial. See 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1373 (3d ed. 2004).

[20] Here, the operative facts are not in dispute. Thus, the district court's task was to determine whether, on the facts presented, personal jurisdiction existed under Rule 4(k)(2). The district court ruled on a cold record. Our review, based as it is on the same cold record, is by its nature de novo.

Procedure 12(b)(2) or a motion to set aside a judgment under Rule 60(b)(4). See

Sloss Indus. Corp. v. Eurisol, 488 F.3d 922, 925 (11th Cir. 2005) (applying de

novo review over in personam jurisdiction challenge brought under Rule

60(b)(4)); Cable/Home Commc'n Corp. v. Network Prods., Inc., 902 F.2d 829,

855 (11th Cir.1990) (applying de novo review in Rule 12(b)(2) context).  This is

so because "'[a]n in personam judgment entered without personal jurisdiction over

a defendant is void as to that defendant.'" Sloss Indus. Corp., 488 F.3d at 924

(quoting Combs v. Nick Garin Trucking, 825 F.2d 437, 442 (D.C. Cir. 1987)).

While it is true that we generally review a district court's denial of a Rule 60(b)

motion to set aside a default judgment under the more deferential abuse of

discretion standard, see In re Worldwide Web Sys., 328 F.3d 1291, 1295 (11th Cir.

2003), de novo review of Rule 60(b)(4) challenges is warranted because a district

court's failure to vacate a void judgment is per se an abuse of discretion.  Burke v.

Smith, 252 F.3d 1260, 1263 (11th Cir. 2001) (quoting Carter v. Fenner, 136 F.3d

1000, 1005 (5th Cir. 1998)) ("Rule 60(b)(4) motions leave no margin for

consideration of the district court's discretion as the judgments themselves are by

definition either legal nullities or not."); Thos. P. Gonzalez Corp. v. Consejo

Nacional de Produccion de Costa Rica, 614 F.2d 1247, 1256 (9th Cir. 1980)

("There is no question of discretion on the part of the court when a motion is under

11

Rule 60(b)(4).  Nor is there any requirement, as there usually is when default

judgments are attacked under Rule 60(b), that the moving party show that he has a

meritorious defense.  Either a judgment is void or it is valid.").[21]

---

[21] Although in personam judgments rendered in the absence of personal jurisdiction over the defendant are considered void, there are limitations on this doctrine. See, e.g., Harris Corp. v. Nat'l Iranian Radio & Television, 691 F.2d 1344, 1353 n.18 (11th Cir. 1982) (holding that an "objection to service of process does not preserve the issue of personal jurisdiction."). One such limitation is that objections to personal jurisdiction—unlike subject matter jurisdiction—are waivable. See Pardazi v. Cullman Medical Ctr., 896 F.2d 1313, 1317 (11th Cir. 1990). The Supreme Court explained this difference in these terms:

> The concepts of subject-matter jurisdiction and personal jurisdiction . . . serve different purposes, and those different purposes affect the legal character of the two requirements.
>
> . . .
>
> Subject-matter jurisdiction . . . is an Art. III as well as a statutory requirement; it functions as a restriction on federal power, and contributes to the characterization of the federal sovereign.  Certain legal consequences directly follow from this. For example, no action of the parties can confer subject-matter jurisdiction upon a federal court.  Thus, the consent of the parties is irrelevant, principles of estoppel do not apply, and a party does not waive the requirement by failing to challenge jurisdiction early in the proceedings . . . .
>
> . . .
>
> None of this is true with respect to personal jurisdiction . . . .  The personal jurisdiction requirement recognizes and protects an individual liberty interest.  It represents a restriction on judicial power not as a matter of sovereignty, but as a matter of individual liberty . . . .Because the requirement of personal jurisdiction represents first of all an individual right, it can, like other such rights, be waived.

Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 701–03, 102 S. Ct. 2099, 2103–05, 72 L. Ed. 2d 492 (1982) (citations omitted).

In accordance with Bauxites, we have found that a party's right to dispute personal jurisdiction is waived if the party fails to assert that objection in its first Rule 12 motion, other responsive pleading or general appearance. Fed. R. Civ. P. 12(h); see Pardazi, 896 F.2d at 1317 (explaining

A.

As stated supra, in cases where a defendant is not amenable to the jurisdiction of any state's courts of general jurisdiction,[22] Rule 4(k)(2) allows a federal district court to exercise personal jurisdiction over a foreign defendant when (1) the claim at issue arises under federal law, and (2) exercising jurisdiction is consistent with the Constitution and laws of the United States. Consol. Dev. Corp. v. Sherritt, Inc., 216 F.3d 1286, 1291 (11th Cir. 2000).[23] In this case, Pueblo

_____

that "[a] party that fails to raise a defense of lack of personal jurisdiction at the appropriate time is deemed to have conferred personal jurisdiction on the court by consent.").

[22] A district court is not required to analyze the laws of all fifty states to ascertain whether any state court of general jurisdiction has jurisdiction over the defendant; rather, "[i]f . . . the defendant contends that he cannot be sued in the forum state and refuses to identify any other where suit is possible, then the federal court is entitled to use Rule 4(k)(2)." ISI Int'l, Inc. v. Borden Ladner Gervais LLP, 256 F.3d 548, 552 (7th Cir. 2001); see also Holland America Line Inc. v. Wartsila North America, Inc., 485 F.3d 450, 461 (9th Cir. 2007) (adopting 7th Circuit approach); Mwani v. bin Laden, 417 F.3d 1, 11 (D.C. Cir. 2005) (same); Adams v. Unione Mediterranea Di Sicurta, 364 F.3d 646, 651 (5th Cir. 2004) (same).

[23] The Advisory Committee Notes to the 1993 amendments to Rule 4 state that subsection (k)(2) "authorizes the exercise of territorial jurisdiction over the person of any defendant against whom is made a claim arising under federal law if that person is subject to personal jurisdiction in no state." The committee goes on to explain that subsection (k)(2) was designed to "correct[] a gap in the enforcement of federal law":

Under the former rule, a problem was presented when the defendant was a non-resident of the United States having contacts with the United States sufficient to justify the application of United States law and to satisfy federal standards of forum selection, but having insufficient contact with any single state to support jurisdiction under state long-arm legislation or meet the requirements of the Fourteenth Amendment limitation on state court territorial jurisdiction. In such cases, the defendant was shielded from the enforcement of federal law by the fortuity of a favorable limitation on the power of state courts, which was incorporated into the federal practice by the former rule.

13

does not challenge the first requirement;[24] rather, it contends that the district

court's assertion of specific personal jurisdiction infringes its Fifth Amendment

right to due process of law.[25]  To that effect, Pueblo argues that its contacts with

the United States were insufficient to satisfy the minimum contacts analysis

required by the constitutional due process guarantee.  Citing <u>Zippo Manufacturing</u>

<u>Co. v. Zippo Dot Com, Inc.</u>, 952 F. Supp. 1119 (W.D. Pa. 1997),[26] Pueblo argues

[24]  The district court found that plaintiff's claim arose under admiralty law because the incident occurred on navigable waters and bore a connection with maritime activity. <u>See</u> <u>World Tanker Carriers Corp. v. M/V/ Ya Mawlaya</u>, 99 F.3d 717, 723 (5th Cir. 1996) (finding that claims arising under admiralty law fall within the Rule 4(k)(2) "arising under" requirement); <u>see also</u> <u>Doe v. Celebrity Cruises, Inc.</u>, 394 F.3d 891, 900 (11th Cir. 2004) (citing <u>Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.</u>, 513 U.S. 527, 534, 115 S. Ct. 1043, 1048, 130 L. Ed. 2d 1024 (1995)).

[25]  As the language and policy considerations of the Due Process Clauses of the Fifth and Fourteenth Amendments are virtually identical, decisions interpreting the Fourteenth Amendment's Due Process Clause guide us in determining what due process requires in the Fifth Amendment jurisdictional context. <u>See</u> <u>Republic of Panama v. BCCI Holdings (Luxembourg) S.A.</u>, 119 F.3d 935, 944 (11th Cir. 1997).

[26] In its order, the district court discussed <u>Zippo</u> at length. We have not directly addressed the issue presented in <u>Zippo</u>, which is whether a non-resident defendant electronically transmitting, or enabling the transmission of, information via the Internet subjects himself to the personal jurisdiction of the forum where plaintiff encountered the electronic information. However, many of our sister circuits have considered the issue and have largely based their analysis on the "sliding scale" model set out in <u>Zippo</u>.  <u>See</u> <u>Best Van Lines, Inc. v. Walker</u>, 490 F.3d 239 (2d Cir. 2007); <u>Toys "R" Us, Inc. v. Step Two, S.A.</u>, 318 F.3d 446, 452 (3d Cir. 2003); <u>ALS Scan, Inc. v. Digital Service Consultants, Inc.</u>, 293 F.3d 707, 713 (4th Cir. 2002); <u>Soma Med. Int'l v. Standard Chartered Bank</u>, 196 F.3d 1292, 1297 (10th Cir. 1999); <u>Mink v. AAAA Dev. LLC</u>, 190 F.3d 333, 336 (5th Cir. 1999); <u>Cybersell, Inc. v. Cybersell, Inc.</u>, 130 F.3d 414, 418 (9th Cir. 1997); <u>see generally</u>  Amanda Reid, <u>Operationalizing the Law of Jurisdiction: Where in the World Can I be Sued for Operating a World Wide Web Page?</u>, 8 Comm. L. & Pol'y 227, 237–48 (2003) (discussing the emergence of the <u>Zippo</u> test and collecting cases applying its analysis).

While many courts have utilized the <u>Zippo</u> test in one form or another, scholars have

14

initally that its website is merely a "passive" site, which serves as nothing more than a virtual billboard, and that its other contacts were isolated and temporally sporadic. Pueblo raises two other points that, it submits, weigh heavily against the exercise of personal jurisdiction: (1) the relationship between Oldfield's alleged injuries and Pueblo's contacts with the forum is too attenuated; and (2) haling it into court in this matter would offend the concept of fundamental fairness. If Pueblo carries the day on any of these three points, it is not amenable to suit in the United States with respect to Oldfield's claim.

The exercise of personal jurisdiction comports with due process if the non-resident defendant has established "certain minimum contacts with the forum such that the maintenance of the suit does not offend traditional notions of fair play and

---

generally been critical of the <u>Zippo</u> construct. One commentator has argued that <u>Zippo</u>'s interactivity litmus test is inconsistent with traditional due process analysis because it excludes all "passive" websites from supporting personal jurisdiction even though the level of interactivity is of minimal significance with respect to whether a defendant has directed the website towards the forum. A. Benjamin Spencer, <u>Jurisdiction and the Internet: Returning to Traditional Principles to Analyze Network-Mediated Contacts</u>, 2006 U. Ill. L. Rev. 71, 86–103 (2006). Rather than utilizing such an artificial approach, Professor Spencer argues that courts should simply apply traditional analysis—looking to whether (1) the defendant directed the internet activity into the state, (2) the internet contact gave rise to the cause of action, and (3) the exercise of jurisdiction is constitutionally reasonable. <u>Id.</u> at 109–11. Another commentator, although arguing that the traditional personal jurisdiction approach should yield in the Internet context, has noted that <u>Zippo</u>'s interactivity model is somewhat unpredictable and should be modified to preserve the constitutionally required "foreseeability" and "fairness" principles. <u>See</u> Reid, <u>supra</u>, at 259–62. Under the proposed modified approach, a finding that the website was highly interactive for purposes of <u>Zippo</u> would only give rise to a presumption of purposeful availment, allowing a defendant to proffer evidence that it was not purposefully targeting the forum. <u>See id.</u>

 Although we pause briefly to discuss the <u>Zippo</u> decision and the debate surrounding it, we express no opinion as to its applicability to the case at hand.

substantial justice." <u>Helicopteros Nacionales de Colombia, S.A. v. Hall</u>, 466 U.S. 408, 414, 104 S. Ct. 1868, 1872, 80 L. Ed. 2d 404 (1984) (internal quotation marks omitted) (quoting <u>Int'l Shoe Co. v. Washington</u>, 326 U.S. 310, 316, 66 S. Ct. 154, 158, 90 L. Ed. 95 (1945)). In cases such as this, where a federal court invokes Rule 4(k)(2), "the applicable forum for the minimum contacts analysis is the United States." <u>Consol. Dev. Corp.</u>, 216 F.3d at 1291 n.6.

To permit the exercise of specific jurisdiction,[27] there must first exist "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum . . . , thus invoking the benefits and protections of its laws." <u>Hanson v. Denckla</u>, 357 U.S. 235, 253, 78 S. Ct. 1228, 2 L. Ed. 2d 1283 (1958). Secondly, the defendant's contacts with the forum must relate to the plaintiff's cause of action or have given rise to it. <u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. 462, 472, 105 S. Ct. 2174, 2182, 85 L. Ed. 2d 528 (1985); <u>SEC v. Carillo</u>, 115 F.3d 1540, 1542 (11th Cir. 1997); <u>accord</u> <u>Schwarzenegger v.</u>

---

[27]Defined simply, "specific jurisdiction" refers to jurisdiction over causes of action arising from or related to a defendant's actions within the forum. <u>See</u> <u>McGow v. McCurry</u>, 412 F.3d 1207, 1214 (11th Cir. 2005). This contrasts with "general jurisdiction," which refers to the power of a court in the forum to adjudicate any cause of action involving a particular defendant, irrespective of where the cause of action arose. <u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. 462, 473 n.15, 105 S. Ct. 2174, 2182 n.15, 85 L. Ed. 2d (1985); <u>Meier v. Sun Int'l Hotels, Ltd.</u>, 288 F.3d 1264, 1274 (11th Cir. 2002).

Fred Martin Motor Co., 374 F.3d 797, 802 (9th Cir. 2004).[28]  These dual

requirements are the constitutional benchmarks of the minimum contacts analysis

and ensure that a defendant is only burdened with litigation in a forum where his

"conduct and connection with the forum . . . are such that he should reasonably

anticipate being haled into court there." World-Wide Volkswagen Corp. v.

Woodson, 444 U.S. 286, 297, 100 S. Ct. 559, 567, 62 L. Ed. 2d 490 (1980); see

Associated Transp. Line, Inc. v. Productos Fitosanitarios Proficol El Carmen,

S.A., 197 F.3d 1070, 1074 (11th Cir. 1999).  As the Supreme Court explained,

> By requiring that individuals have fair warning that a
> particular activity may subject them to the jurisdiction of
> a foreign sovereign, the Due Process Clause gives a
> degree of predictability to the legal system that allows
> potential defendants to structure their primary conduct
> with some minimum assurance as to where that conduct
> will and will not render them liable to suit.

Burger King, 471 U.S. at 472, 105 S. Ct. at 2182 (quotation marks and citations

omitted); RAR, Inc. v. Turner Diesel, Ltd., 107 F.3d 1272, 1277–78 (7th Cir.

---

[28]This formulation of the minimum contacts test is applicable to cases involving claims of negligence—such as the case here.  A different test, however, applies in cases involving intentional torts.  In those instances, the applicable test is the "effects" test utilized in Calder v. Jones, 465 U.S. 783, 104 S. Ct. 1482, 79 L. Ed. 2d 804 (1984).  Stated in its broadest construction, the effects test requires a showing that the defendant (1) committed an intentional tort (2) that was directly aimed at the forum, (3) causing an injury within the forum that the defendant should have reasonably anticipated. See id. at 789–90, 104 S. Ct. at 1487; IMO Indus., Inc. v. Kiekert AG, 155 F.3d 254, 261 (3d Cir. 1998); New Lennox Industries v. Fenton, 510 F. Supp. 2d 893, 904 (M.D. Fla. 2007).

17

1997) (finding that as long as out-of-state residents refrain from conducting continuous and substantial forum contacts they can conduct their affairs "confident that transactions in one context will not come back to haunt them unexpectedly in another.").

The minimum contacts a defendant may have purposely established with the forum must be evaluated in light of other factors to ensure that the exercise of jurisdiction comports with traditional notions of "fair play and substantial justice." Int'l Shoe, 326 U.S. at 320, 66 S. Ct. at 160.[29] A "primary concern" of the "fairness" test is the burden placed on the defendant, World-Wide Volkswagen, 444 U.S. at 292, 100 S. Ct. at 292–93, and, in cases involving international defendants, courts should consider "[t]he unique burdens placed upon one who must defend oneself in a foreign legal system," Asahi Metal Indus. Co., Ltd v. Superior Court, 480 U.S. 102, 114, 107 S. Ct. 1026, 1033, 94 L. Ed. 2d 92 (1987).[30] Factors that must be considered in evaluating the fairness requirement

---

[29]The presence of minimum contacts raises a presumption that the court may constitutionally exercise jurisdiction. To rebut that presumption, the defendant "must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." Burger King, 471 U.S. at 477, 105 S. Ct. at 2185.

[30]In International Shoe, the Court based its opinion, in part, on the concept that a forum's exercise of jurisdiction over a defendant conducting business within the forum does not create an undue burden because the defendant has taken advantage of certain benefits and protections within the forum. 326 U.S. at 320, 66 S. Ct. at 160. The logical inference is that due process is only offended when the burden placed upon the defendant is incommensurate with the benefits and protections the defendant has received within the forum. See Schwartzenegger, 374 F.3d at

18

include:

> [T]he forum State's interest in adjudicating the dispute; the plaintiff's interest in obtaining convenient and effective relief, at least when that interest is not adequately protected by the plaintiff's power to choose the forum; the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several States in furthering fundamental substantive social policies.

World-Wide Volkswagen, 444 U.S. at 292, 100 S. Ct. at 564 (citations omitted);

see also Asahi, 480 U.S. at 113, 107 S. Ct. at 1033; Burger King, 471 U.S. at

476–77, 105 S. Ct. at 2184; Kulko v. California Superior Court, 436 U.S. 84,

97–98, 98 S. Ct. 1690, 1699–1700, 56 L. Ed. 2d 132 (1978); McGee v. Int'l Life

Ins. Co., 355 U.S. 220, 223, 78 S. Ct. 199, 201, 2 L. Ed. 2d 223 (1957).

Although Pueblo argues that none of the specific jurisdiction requirements have been satisfied, we need only consider one: the requirement that Oldfield's claim must have arisen out of or relate to Parrot Bay Village's contacts with the United States. We find that it does not.

B.

As previously stated, a fundamental element of the specific jurisdiction

---

802 ("In return for these benefits and protections, a defendant must—as a quid pro quo—submit to the burdens of litigation in that forum.") (citations and internal quotations omitted); Coté v. Wadel, 796 F.2d 981, 984 (7th Cir. 1986) ("Personal jurisdiction over non-residents of a state is a quid for a quo that consists of the state's extending protection or other services to the nonresident.").

calculus is that plaintiff's claim must "arise out of or relate to" at least one of

defendant's contacts with the forum.[31] Burger King, 471 U.S. at 472, 105 S. Ct. at

2182. The Supreme Court has not yet fully delineated the contours of the

"relatedness" requirement, see Helicopteros, 466 U.S. at 415 n.10, 104 S. Ct. at

1872 n.10, leaving state and lower courts to fashion their own blueprint for

analysis, see Miller Yacht Sales, Inc. v. Smith, 384 F.3d 93, 97 (3d Cir. 2004)

(Scirica, C.J., dissenting in part) ("The courts of appeals have adopted divergent

interpretations of 'arise out of or relate to' as that phrase relates to the specific

jurisdiction analysis."). Unlike other courts,[32] we have not developed or adopted a

specific approach to determining relatedness; instead, we have heeded the

Supreme Court's warning against using "mechanical or quantitative" tests. See

Int'l Shoe, 326 U.S. at 319, 66 S. Ct. at 159; see Kulko, 436 U.S. at 92, 98 S. Ct. at

---

[31] We note that the particular cause of action at issue, here a negligence claim, is the focal point of the analysis, as an identical set of contacts may be related to or give rise to certain causes of action but not others.

[32] Other courts have developed somewhat rigid approaches for answering the relatedness question. Of these approaches, three predominate. In the first approach, the relatedness inquiry focuses on whether the defendant's contacts were the legal cause of the alleged injury. See, e.g., Peckham v. Continental Casualty Ins. Co., 895 F.2d 830, 836 (1st Cir. 1990). In the second approach, the inquiry is whether the plaintiff's claim would not have arisen "but-for" defendant's contacts. See, e.g., Shute v. Carnival Cruise Lines, 897 F.2d 377, 385–86 (9th Cir. 1990) rev'd on other grounds 499 U.S. 585, 111 S. Ct. 1522, 113 L. Ed. 2d 622 (1991). In the third approach, the court examines whether a substantial connection exists between the defendant's contacts and the plaintiff's cause of action. See e.g., Third Nat'l Bank v. WEDGE Group Inc., 882 F.2d 1087, 1091 (6th Cir. 1989); cf. Deluxe Ice Cream Co. v. R.C.H. Tool Corp., 726 F.2d 1209, 1215–16 (7th Cir. 1984).

1697 ("[F]ew answers will be written in black and white. The greys are dominant and even among them the shades are innumerable.") (quotation marks omitted); Borg-Warner Acceptance Corp. v. Lovett & Tharpe, Inc., 786 F.2d 1055, 1058 (11th Cir. 1986) (finding that questions of jurisdictional due process are "immune to solution by checklist, and each case must be decided on its own facts.") (citation omitted).

While emphasizing that courts should refrain from rigid tests, the Supreme Court has instructed courts to interpret the Due Process Clause in such a way as to provide "a degree of predictability to the legal system," thereby allowing foreign residents the opportunity to "structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." World-Wide Volkswagen, 444 U.S. at 297, 100 S. Ct. at 567. To that end, our inquiry must focus on the direct causal relationship among "the defendant, the forum, and the litigation." Helicopteros, 466 U.S. at 414, 104 S. Ct. at 1872 (citation omitted). Necessarily, the contact must be a "but-for" cause of the tort, yet the causal nexus between the tortious conduct and the purposeful contact must be such that the out-of-state resident will have "fair warning that a particular activity will subject [it] to the jurisdiction of a foreign sovereign . . . ." Burger King, 471 U.S. at 472, 105 S. Ct. at 2182 (citation omitted; alteration in original);

see O'Connor v. Sandy Lane Hotel Co., 496 F.3d 312, 322–23 (3d Cir. 2007) (noting that while but-for causation is a necessary element of the relatedness inquiry, there must also be evidence of a "tacit quid pro quo" between the out-of-state resident and the forum making "litigation in the forum reasonably foreseeable.").

In SEC v. Carrillo, 115 F.3d at 1540 (11th Cir. 1997), we utilized a fact-sensitive analysis consonant with the principle that foreseeability constitutes a necessary ingredient of the relatedness inquiry. Carrillo involved an action by the SEC against a Costa Rican corporation and two of its officers for the fraudulent offer and sale of securities. The corporation's main contacts with the United States consisted of advertising the securities in two airline magazines, mailing investment materials and application forms directly to United States investors, maintaining bank accounts in the United States to receive payments, and mailing at least one stock certificate to an investor in the United States. Addressing the relatedness requirement, we found "that the alleged contacts are related to, or gave rise to, the causes of action because each of the contacts was a step by which the allegedly fraudulent scheme was carried out." Id. at 1544. Put differently, "by advertising, offering shares, and accepting payment in this country, [the defendant] did everything necessary to complete the offer and sales of the

unregistered securities [in the United States]." Id. at 1545. Accordingly, by purposefully making contacts within the forum that were necessarily related to or gave rise to the fraudulent activity, the defendant could reasonably foresee that it would cause harm within the forum and thereby had fair warning that it could be subject to suit in the United States based on the harm caused. See Burger King, 471 U.S. at 472, 105 S. Ct. at 2182.

The facts of this case, however, are distinct from those in Carrillo. Parrot Bay Village's internet contacts with the United States were related to Oldfield's negligence claim, but only in the sense that but-for the website being made available to United States residents Oldfield would not have gone to Costa Rica, boarded the fishing boat, and suffered an injury. The problem with this but-for approach is that it is over-inclusive, making any cause of action, no matter how unforeseeable, necessarily "related to" the initial contact. See Nowak v. Tak How Invs., Ltd., 94 F.3d 708, 715 (1st Cir. 1996) (commenting that "but-for" causation formulation is too overinclusive to satisfy relatedness requirement because it "has . . . no limiting principle; it literally embraces every event that hindsight can logically identify in the causative chain."). Instead, we examine whether the injury Oldfield suffered—while aboard a fishing vessel that Pueblo neither owned nor operated—was a foreseeable consequence of his viewing the Parrot Bay

Village website, reserving a room at the resort, and arranging for a fishing trip run by someone else. Thus stated, it is apparent that the nexus between Oldfield's injury and the internet contact is too remote to satisfy the relatedness requirement. A finding that such a tenuous relationship between Pueblo's relevant contacts and the negligence of the captain who was not employed or controlled by Pueblo somehow satisfied the relatedness requirement would not only contravene the fairness principles that permeate the jurisdictional due process analysis, but would also interpret the requirement so broadly as to render it virtually meaningless. Cf. Sun Trust Bank v. Sun Int'l Hotels Ltd., 184 F. Supp. 2d 1246, 1270 (S.D. Fla. 2001) ("[A] negligence action for personal injuries sustained at a hotel while vacationing in another country does not 'arise from' the simple act of making a reservation by calling the hotel's reservations office in Florida.") (citing Limardo v. Corporacion Intercontinental, 590 F. Supp. 1109, 1111 (S.D. Fla. 1984), which found that negligence claim brought against a hotel had no jurisdictionally significant connection to contractual arrangements made to secure reservations).

While we do not suggest that our decision today establishes a definitive relatedness standard—as flexibility is essential to the jurisdictional inquiry—we do find that the fact-sensitive inquiry must hew closely to the foreseeability and fundamental fairness principles forming the foundation upon which the specific

jurisdiction doctrine rests. See Burger King, 471 U.S. at 475–76, 105 S. Ct. at 2183–84; Int'l Shoe, 326 U.S. at 319, 66 S.Ct. at 159–60; Nowak, 94 F.3d at 715. The relatedness element demands a closer and more substantial causal relationship between the relevant contacts and the alleged tort than the relationship presented here.[33] The district court therefore erred in exercising specific personal jurisdiction over Pueblo.[34]

III.

For the reasons stated above, the district court's order denying Pueblo's motion to set aside the default judgment is vacated, and the case is remanded with the instruction that the case be dismissed without prejudice.

SO ORDERED.

---

[33] Oldfield argues that a strict "but for" test was adopted by the former Fifth Circuit in Prejean v. Sonatrach, 652 F.2d 1260, 1270 n.21 (5th Cir. 1981), and that we are therefore bound to find that the relatedness prong is satisfied in the case before us today. See Bonner v. Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) (adopting as binding precedent the decisions of the former Fifth Circuit handed down prior to October 1, 1981). We disagree. The Prejean opinion did not specifically consider relatedness as part of a due process analysis but, instead, addressed the meaning and application of the Texas long-arm statute. 652 F.2d at 1264, 1270 n.21. Moreover, while we recognize that Prejean contains language in footnote 21 that tends to support Oldfield's position, it was not necessary to the holding of that case and was, therefore, dicta. See Black v. United States, 373 F.3d 1140, 1144 (11th Cir. 2004).

[34] By the same token, the court erred in exercising personal jurisdiction over co-defendant Iffy Iffy de Osa, S.A..