[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

Nos. 08-10680 & 08-11417
Non-Argument Calendar

_____

D. C. Docket No. 04-22191-CV-AJ

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JAN 21, 2010
JOHN LEY
ACTING CLERK

CHARLES E. FRASER,
Estate of Charles E. Fraser, deceased, by and
through its co-personal representatives Laura
Lawton Stone Fraser and Charles A. Scarminach
and Mary Wyman Stone Fraser, individually,
LAWTON STONE FRASER, individually and on behalf
of her minor child, Samuel Arnal,

Plaintiffs-Appellants,

versus

JERRY SMITH, individually,
a.k.a. Reliable Salvage and Towing, Inc.,
d.b.a. Wayward Boats,
a.k.a. Wayward Marine,
a.k.a. Wayward Vessels,
a.k.a. New River Industries,
a.k.a. New River Transport,
a.k.a. Tow Boat US,
DENYS W. BRADLEY, JR., individually,
d.b.a. Belize Fiberglass Products,

Defendants,

J&B TOURS, LTD.,

Defendant-Appellee.

_____

Appeals from the United States District Court
for the Southern District of Florida
_____

(January 21, 2010)

Before EDMONDSON, BIRCH and KRAVITCH, Circuit Judges.

KRAVITCH, Circuit Judge:

Charles Fraser died, and several of his family members suffered injuries, in

a tragic explosion aboard the *Sundance*, a boat operated by J&B Tours in the

Turks and Caicos Islands. Charles's estate and his injured relatives sued J&B

Tours and several other defendants in the Southern District of Florida,[1] asserting

various common-law claims and a federal statutory claim under the Death on the

High Seas Act (DOHSA), 46 U.S.C. §§ 30301–08. The Frasers appeal from the

district court's order dismissing their claims against J&B Tours for lack of

personal jurisdiction.

## I. BACKGROUND

J&B Tours is a commercial tour operator, organized under the laws of the

Turks and Caicos Islands (TCI), that specializes in providing boat charters and

---

[1] The Frasers filed their initial complaint in the District of South Carolina, but the parties consented, without waiving any jurisdictional defenses, to the transfer of the action to the Southern District of Florida.

2

recreational water-sports services to foreign visitors. It is owned and operated by two full-time TCI residents and maintains its only offices in that territory. Although the company has no property or official presence in the United States, many of its customers are American tourists. To attract business from the United States and elsewhere, J&B Tours maintains a publicly accessible website (originally designed by a former customer in Pennsylvania) with local contact information and descriptions of its services.

In its efforts to draw customers over the years, J&B Tours has advertised in several publications with circulation in the United States. It once placed an advertisement in Bridal Magazine, an American publication. It also placed a joint advertisement, with local hotels and the TCI Tourist Board, in the Miami Herald, and it has paid for advertising in a magazine distributed on commercial flights from the United States to the Islands. In addition, the company has appeared on an American television show and allowed itself to be listed in travel guides and directories available on the U.S. market.

J&B Tours has also established a number of business relationships with companies based in the United States. For example, it procured liability insurance through an insurance agent in Florida and has occasionally hired U.S. businesses to provide miscellaneous services to the company and its owners. It is the

preferred services provider in the Turks and Caicos Islands for Maritz Company, a St. Louis-based travel company, and it maintains local relationships with TCI hotels owned by American companies. Furthermore, J&B Tours receives a commission for referring its customers to either of two American-owned car-rental companies. Finally, since its founding in 1993, J&B Tours has purchased about half of its boats in Florida.[2]

Although J&B Tours has no employees in the United States, its owners have traveled here frequently, for both business (to arrange company purchases) and pleasure. One of the owners, in fact, is a U.S. citizen with a U.S. passport. In addition, the company once sent a maintenance supervisor to attend a five-month course on mechanical repairs in Florida. And on three occasions, J&B Tours sent representatives to the United States to promote its services: first, at a Delta Airlines promotion of the Turks and Caicos Islands in Atlanta, Georgia; second, in St. Louis to establish its relationship with Maritz Company; and third, at a trade show for the tourism industry in Florida. J&B Tours also had a brief promotional agreement with an individual in the Washington, D.C. area, but the arrangement failed to yield any business.

---

[2] At the time of the explosion aboard the *Sundance*, eight of the ten boats J&B Tours owned had been purchased in Florida.

The *Sundance* was one of five boats J&B Tours had purchased in Florida from Jerry Smith, a co-defendant in this litigation. The Frasers allege that Smith's defective design and construction of the *Sundance*, along with J&B Tours' negligent maintenance thereof, allowed a spark inside the hull of the vessel to ignite fumes surrounding the fuel tank.[3] The resulting explosion formed the basis for the Frasers' claims.

J&B Tours filed a motion to dismiss for, among other things, lack of personal jurisdiction. Following oral argument, the district court concluded that it lacked jurisdiction over J&B Tours and granted the motion. The Frasers appeal, arguing that the district court had both general and specific jurisdiction over J&B Tours pursuant to Florida's long-arm statute and Federal Rule of Civil Procedure 4(k)(2).[4]

## II. DISCUSSION

We review the district court's dismissal for lack of personal jurisdiction *de novo*. *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 626 (11th Cir. 1996).

---

[3] The Frasers also allege, in part, that J&B Tours asked Smith to send someone from Florida to repair the *Sundance* and that those repairs exacerbated the original defect in the boat's design.

[4] A court exercises "general jurisdiction" over a defendant in a suit not arising from or related to the defendant's contacts with the forum. In a suit arising from or related to those contacts, the court exercises "specific jurisdiction" over the defendant. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 nn.8–9 (1984).

We accept factual allegations in the complaint as true to the extent that they are uncontested and, in cases of conflict, construe all reasonable inferences in the plaintiffs' favor. *SEC v. Carrillo*, 115 F.3d 1540, 1542 (11th Cir. 1997). The Frasers assert four bases for personal jurisdiction over J&B Tours, and we address them in turn.

*A. Florida's Long-Arm Statute*

"A federal district court in Florida may exercise personal jurisdiction over a nonresident defendant to the same extent that a Florida court may, so long as the exercise is consistent with federal due process requirements." *Licciardello v. Lovelady*, 544 F.3d 1280, 1283 (11th Cir. 2008). We therefore turn to Florida's long-arm statute to determine whether a Florida court could exercise jurisdiction over J&B Tours in this case. *Sculptchair*, 94 F.3d at 626–27. The Frasers argue that J&B Tours was subject to the district court's general jurisdiction pursuant to Fla. Stat. § 48.193(2) and, in the alternative, that the court had specific jurisdiction to adjudicate their claims against J&B Tours under Fla. Stat. § 48.193(1)(a).

*1. General Jurisdiction Under Section 48.193(2)*

Section 48.193(2) of Florida's long-arm statute provides: "A defendant who is engaged in substantial and not isolated activity within this state, whether such activity is wholly interstate, intrastate, or otherwise, is subject to the jurisdiction of

6

the courts of this state, whether or not the claim arises from that activity." The reach of this provision extends to the limits on personal jurisdiction imposed by the Due Process Clause of the Fourteenth Amendment. *Woods v. Nova Cos. Belize*, 739 So. 2d 617, 620 (Fla. Dist. Ct. App. 1999). With respect to general jurisdiction under Florida's long-arm statute, therefore, we need only determine whether the district court's exercise of jurisdiction over J&B Tours would exceed constitutional bounds.

"The exercise of personal jurisdiction comports with due process if the non-resident defendant has established 'certain minimum contacts with the forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Oldfield v. Pueblo de Bahia Lora, S.A.*, 558 F.3d 1210, 1220 (11th Cir. 2009) (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)). The defendant's contacts with the forum must be "continuous and systematic" to support the exercise of general jurisdiction. *Helicopteros*, 466 U.S. at 416. We conclude that J&B Tours' contacts with Florida do not meet this standard.

Many of J&B Tours' contacts with the forum in this case were also present in *Helicopteros*, in which the Supreme Court held that general jurisdiction over the defendant would not lie. In that case, the defendant had purchased eighty percent

7

of its helicopter fleet in the forum and sent its employees there for training. But as the Supreme Court explained, "purchases and related trips, standing alone, are not a sufficient basis for a State's assertion of jurisdiction." *Id.* at 417; *accord Consolidated Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1292 (11th Cir. 2000) ("[M]erely purchasing materials, even if done regularly, is not contact sufficient to support personal jurisdiction.").[5] Nor is an employee's temporary presence in the forum for training purposes sufficient. *Id.* at 418.

Unlike the defendant in *Helicopteros*, however, J&B Tours solicited business in Florida as part of its general effort to attract customers from the United States. Nevertheless, "[p]lacing advertisements in a newspaper is not a sufficient connection to the forum for in personam jurisdiction," *Sherritt*, 216 F.3d at 1292, and we see nothing continuous or systematic about J&B Tours' limited advertising in Florida. A defendant does not confer general jurisdiction on the courts of Florida by occasionally soliciting business there. *Price v. Point Marine, Inc.*, 610 So. 2d 1339, 1342 (Fla. Dist. Ct. App. 1992).

---

[5] That J&B Tours had an owner with a U.S. passport is irrelevant. "To establish that a defendant is engaged in substantial activity within the state, the activity must be more than 'incidental, almost entirely personal contacts with the state . . . .'" *Slaihem v. Sea Tow Bah. Ltd.*, 148 F. Supp. 2d 1343, 1350 (S.D. Fla. 2001) (omission in original) (quoting *Elmlund v. Mottershead*, 750 So. 2d 736, 737 (Fla. Dist. Ct. App. 2000)); *cf. Sherritt*, 216 F.3d at 1293 ("The casual presence of a corporate agent in the forum is not enough to subject the corporation to suit where the cause of action is unrelated to the agent's activities." (citation omitted)).

With respect to J&B Tours' website, although we have not established a firm rule for personal jurisdiction in the Internet context, *Licciardello*, 544 F.3d at 1288 n.8, other courts have recognized that "the mere existence of a website that is visible in a forum and that gives information about a company and its products is not enough, by itself, to subject a defendant to personal jurisdiction in that forum." *McBee v. Delica Co.*, 417 F.3d 107, 124 (1st Cir. 2005); *see also, e.g.*, *Trintec Indus. v. Pedre Promotional Prods.*, 395 F.3d 1275, 1281 (Fed. Cir. 2005). "Though the maintenance of a website is, in a sense, a continuous presence everywhere in the world," J&B Tours' Internet contacts with Florida were "not in any way 'substantial.'" *Revell v. Lidov*, 317 F.3d 467, 471 (5th Cir. 2002).

After considering all of J&B Tours' Florida contacts in aggregation, we conclude that they are insufficient to afford the Florida courts jurisdiction over claims totally unrelated to those contacts.[6] Due process concerns therefore preclude the exercise of general personal jurisdiction over J&B Tours under Florida's long-arm statute.

---

[6] As in *Helicopteros*, "nothing in the nature of the relationship between" the Frasers and J&B Tours "could possibly enhance" the defendant's contacts with the forum. *Helicopteros*, 466 U.S. at 412 n.5. The Frasers are North and South Carolina residents who neither suffered harm in Florida nor alleged negligence on the part of J&B Tours in Florida.

*2. Specific Jurisdiction Under Section 48.193(1)(a)*

The specific-jurisdiction provision of Florida's long-arm statute states, in relevant part, that a defendant "submits himself or herself . . . to the jurisdiction of the courts of this state for any cause of action arising from" the defendant's activities "[o]perating, conducting, engaging in, or carrying on a business or business venture in this state." Fla. Stat. § 48.193(1)(a). We conclude that J&B Tours' conduct does not satisfy the requirements of this subsection.[7]

In support of their argument that J&B Tours conducted business in Florida, the Frasers rely on the same contacts that they alleged to be "continuous and systematic" for the purposes of the general-jurisdiction analysis. To establish a court's specific jurisdiction under § 48.193(1)(a), however, a nonresident defendant's activities "must . . . show a general course of business activity in the State *for pecuniary benefit*." *Dinsmore v. Martin Blumenthal Assocs.*, 314 So. 2d 561, 564 (Fla. 1975) (emphasis added) (construing materially identical statutory language in Florida's service-of-process statute, Fla. Stat. § 48.181(1)).[8]

---

[7] The Frasers do not contend on appeal that J&B Tours falls under any of the statute's other provisions for specific jurisdiction, and we agree that it does not.

[8] "Florida's long-arm statute is to be strictly construed," *Sculptchair*, 94 F.3d at 627, and because "the extent of the long-arm statute is governed by Florida law, federal courts are required to construe it as would the Florida Supreme Court," *Cable/Home Commc'n Corp. v. Network Prods., Inc.*, 902 F.2d 829, 856 (quotation marks and citation omitted).

10

J&B Tours' business activities in Florida boil down to purchases, visits, and advertising. A purchase of goods or services inures to the seller's pecuniary benefit, not to the purchaser's. *Cf. Future Tech. Today, Inc. v. OSF Healthcare Sys.*, 106 F. Supp. 2d 1278, 1281 (S.D. Fla. 1999) ("The contract with plaintiff was not for defendant's pecuniary benefit in any direct sense. . . . [T]he immediate pecuniary interest to the defendant was the expenditure in excess of $800,000 paying for plaintiff's services."), *aff'd*, 218 F.3d 1247 (11th Cir. 2000). Similarly, among the visits of J&B Tours' representatives to Florida, only its employee's attendance at the tourism trade show could have financially benefitted the company "in any direct sense." *Id.* Moreover, although "solicitation is one factor the courts consider in deciding whether a company is conducting business in" Florida, *Citicorp Ins. Brokers, Ltd. v. Charman*, 635 So. 2d 79, 81 (Fla. Dist. Ct. App. 1994), the Frasers have not alleged that they ever actually saw any of J&B Tours' advertising. "[T]he plaintiff bears the burden of proving personal jurisdiction," *Sculptchair*, 94 F.3d at 627, and in the absence of any allegation that J&B Tours' solicitation activities in Florida influenced the Frasers' decision to charter the *Sundance*, we cannot conclude that their claims "aris[e] from" those activities under § 48.193(1).

11

The Frasers also argue that J&B Tours' contacts with Florida satisfied the requirements of the Fourteenth Amendment's Due Process Clause. Although we are skeptical of this contention, *see* discussion *infra* Part II.B.2, we need not address it here. Section 48.193(1)(a) "requires more activities or contacts to sustain service of process than are . . . required by decisions of the Supreme Court of the United States." *Citizens State Bank v. Winters Gov't Secs. Corp.*, 361 So. 2d 760, 762 (Fla. Dist. Ct. App. 1978). The Frasers must establish that both the statutory and the due process requirements for specific jurisdiction have been met, *Licciardello*, 544 F.3d at 1293, and their failure with respect to the former precludes the assertion of specific jurisdiction over J&B Tours under Florida's long-arm statute.

*B. Federal Rule of Civil Procedure 4(k)(2)*

Failing the existence of personal jurisdiction under Florida's long-arm statute, the Frasers argue that J&B Tours is subject to the district court's jurisdiction under the "national long-arm statute," Federal Rule of Civil Procedure 4(k)(2).

> Where, as here, a defendant is not subject to the jurisdiction of the courts of general jurisdiction of any one state, Rule 4(k)(2) permits a court to aggregate a foreign defendant's nationwide contacts to allow for service of process provided that two conditions are met: (1) plaintiff's claims must "arise under federal law;" and, (2) the exercise

12

of jurisdiction must be "consistent with the Constitution and laws of the United States."

*Sherritt*, 216 F.3d at 1291 (quoting Fed. R. Civ. P. 4(k)(2)).[9] The Frasers' DOHSA and maritime tort claims arise under federal law. 46 U.S.C. § 30302; *Mink ex rel. Ins. Co. of N. Am. v. Genmar Indus.*, 29 F.3d 1543, 1544–47 (11th Cir. 1994). We therefore must determine whether the exercise of federal jurisdiction over J&B Tours would be consistent with the requirements of the Fifth Amendment's Due Process Clause.[10]

*1. General Jurisdiction Under Rule 4(k)(2)*

As in other contexts, a district court's exercise of general personal jurisdiction under Rule 4(k)(2) requires a showing of continuous and systematic contacts between the defendant and the relevant forum—here, the United States. *Sherritt*, 216 F.3d at 1292. Accordingly, to the extent the Frasers rely on the same Florida contacts they alleged to support general jurisdiction under Florida's long-arm statute, our analysis is the same. The question is whether those contacts,

---

[9] The parties have not identified any state courts other than Florida's in which J&B Tours might be subject to jurisdiction. Under these circumstances, we need not analyze the laws of the other forty-nine states before turning to Rule 4(k)(2). *Oldfield*, 558 F.3d at 1219 n.22.

[10] "As the language and policy considerations of the Due Process Clauses of the Fifth and Fourteenth Amendments are virtually identical, decisions interpreting the Fourteenth Amendment's Due Process Clause guide us in determining what due process requires in the Fifth Amendment jurisdictional context." *Oldfield*, 558 F.3d at 1219 n.25.

when combined with J&B Tours' other U.S. contacts, may fairly be described as continuous and systematic in relation to the nation as a whole.

In addition to J&B Tours' Florida-specific contacts, the Frasers rely on the broader reach of its U.S. advertising and promotional activities, the substantial representation of U.S. tourists among its customers, and its relationships with American businesses based outside Florida. With respect to J&B Tours' promotional activities, we note the two additional trips its representatives made to the United States trying to secure American business, and we acknowledge the impact of its advertising campaign outside Florida. Even so, these activities were no more continuous and systematic than the company's activities in Florida. Similarly, the fact that J&B Tours provided services to American citizens in the Turks and Caicos Islands does not establish "continuous and systematic general business contacts between the defendant and the forum state." *Sherritt*, 216 F.3d at 1292. A defendant's business contacts with foreign tourists are not, by themselves, contacts with the tourists' home forum. *Cf. Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474–75 (1985) ("The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State." (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958))).

14

J&B Tours' forum contacts through American businesses are somewhat more substantial. Although a defendant does not confer personal jurisdiction on our courts by making purchases from American companies, *Helicopteros*, 466 U.S. at 417, two American car-rental companies paid J&B Tours commissions for its referrals in the Turks and Caicos Islands. It also acted as the preferred services provider for Maritz Company, based in St. Louis, and received business from American customers via that relationship.

Even in combination with J&B Tours' Florida-specific contacts, however, these nationwide contacts cannot support the exercise of general jurisdiction over J&B Tours. To conclude that J&B Tours is subject to general personal jurisdiction under Rule 4(k)(2) would imply that the company is amenable to suit everywhere in the United States on any claim arising under federal law. That result would undermine our adherence to the proposition that "[a] party's contacts with the forum that are unrelated to the litigation must be pervasive in order to support the exercise of personal jurisdiction under Rule 4(k)(2)." *Associated Transp. Line, Inc. v. Productos Fitosanitarios Proficol El Carmen, S.A.*, 197 F.3d 1070, 1075 (11th Cir. 1999) (emphasis omitted). When a defendant's contacts with the United States are confined to intermittent purchases, limited self-promotion, and a few narrow relationships with American businesses, the exercise

of nationwide general jurisdiction over that defendant would "offend traditional notions of fair play and substantial justice," *Helicopteros*, 466 U.S. at 414. We thus conclude that the contacts in this case were not sufficiently pervasive, continuous, and systematic to establish general jurisdiction over J&B Tours.

*2. Specific Jurisdiction Under Rule 4(k)(2)*

The due process prerequisites to the exercise of specific jurisdiction over a defendant are less restrictive than the requirements for general jurisdiction. *Sherritt*, 216 F.3d at 1292. The minimum-contacts test for specific jurisdiction has three elements. First, the defendant must have contacts related to or giving rise to the plaintiff's cause of action. Second, the defendant must, through those contacts, have purposefully availed itself of forum benefits. Third, the defendant's contacts with the forum must be such that it could reasonably anticipate being haled into court there. *Sculptchair*, 94 F.3d at 631.

Although J&B Tours' contacts with the United States demonstrate its propensity to avail itself of certain forum goods, services, and advertising, "a fundamental element of the specific jurisdiction calculus is that plaintiff's claim must 'arise out of or relate to' at least one of defendant's contacts with the forum." *Oldfield*, 558 F.3d at 1222 (quoting *Burger King*, 471 U.S. at 472). In other words, "our inquiry must focus on the direct causal relationship among 'the

defendant, the forum, and the litigation.'" *Id.* (quoting *Helicopteros*, 466 U.S. at 414). We conclude that the Frasers have not established the necessary relationship between their claims and J&B Tours' contacts with the United States.

We have not developed a specific approach to determining whether a defendant's contacts "relate to" the plaintiff's claims, but we recently held that "[n]ecessarily, the contact must be a 'but-for' cause of the tort." *Oldfield*, 558 F.3d at 1222–23. The Frasers insist that J&B Tours' U.S. contacts bear a causal relation to the explosion aboard the *Sundance*, but many of these contacts cannot reasonably be construed as but-for causes of the accident. For instance, as we explained in our analysis of specific jurisdiction under Florida's long-arm statute, if the Frasers were never exposed to J&B Tours' advertising in the United States, then its efforts to solicit business there could not have led to their injuries.[11] Likewise, because the Frasers have not alleged exposure to the company's website in the United States, we will not assume that but for the website they would not have been injured. The same must be said for most of J&B Tours' business relationships with American companies.

---

[11] Our decision in *SEC v. Carillo*, 115 F.3d 1540 (11th Cir. 1997), which reversed a dismissal for lack of specific jurisdiction under Rule 4(k)(2), is not to the contrary. In that case, the SEC had sued a foreign defendant whose advertising was part of a scheme by which it had allegedly sold unregistered securities to American investors. J&B Tours' advertising, by contrast, lacks a similarly direct connection to its allegedly tortious conduct.

Two of J&B Tours' contacts arguably do qualify as but-for causes of the Frasers' injuries. First, the Frasers allege that they booked their reservation with J&B Tours through the American-owned hotel where they were staying. Second, J&B Tours purchased the *Sundance* in Florida and had it repaired in the Turks and Caicos Islands by one of co-defendant Smith's agents from Florida. As we indicated in *Oldfield*, however, a pure "but-for approach is . . . over-inclusive, making any cause of action, no matter how unforeseeable, necessarily 'related to' the initial contact." 558 F.3d at 1223. We must therefore search for "a closer and more substantial causal relationship between the relevant contacts and the alleged tort." *Id.* at 1224. This search entails a "fact-sensitive inquiry . . . hew[ing] closely to the foreseeability and fundamental fairness principles forming the foundation upon which the specific jurisdiction doctrine rests." *Id.*

The Frasers' injuries were not a sufficiently foreseeable consequence of their hotel's business relationship with J&B Tours to satisfy the constitutional relatedness requirement. "[A] negligence action for personal injuries sustained . . . while vacationing in another country does not 'arise from' the simple act of making a reservation . . . ." *Sun Trust Bank v. Sun Int'l Hotels, Ltd.*, 184 F. Supp. 2d 1246, 1270 (S.D. Fla. 2001) (citation omitted). "A finding that such a tenuous relationship . . . somehow satisfied the relatedness requirement would not only

18

contravene the fairness principles that permeate the jurisdictional due process analysis, but would also interpret the requirement so broadly as to render it virtually meaningless." *Oldfield*, 558 F.3d at 1223–24.

Nor can the Frasers' claims fairly be said to relate to J&B Tours' purchase of the *Sundance* in the United States. Although the purchase might support the exercise of specific jurisdiction over J&B Tours on contractual claims arising directly from that transaction,[12] the Frasers' injuries have only an attenuated causal connection to the purchase itself. Buying goods from within a forum does not make a nonresident defendant amenable to suit there on the unrelated tort claims of a third party.

With respect to the *Sundance*'s repair by one of Smith's agents, although injuries arising from the negligent repairs may have been foreseeable in some sense, "'foreseeability' alone has never been a sufficient benchmark for personal jurisdiction under the Due Process Clause." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 295 (1980). On the contrary, "the foreseeability that is

---

[12] *Compare Sloss Indus. Corp. v. Eurisol*, 488 F.3d 922, 933 (11th Cir. 2007) (approving the exercise of specific jurisdiction on a contractual claim when there had been a course of dealing between the nonresident defendant and the plaintiff and the defendant had participated in shipping the goods purchased), *with Borg-Warner Acceptance Corp. v. Lovett & Tharpe, Inc.*, 786 F.2d 1055, 1059 (11th Cir. 1986) (holding that even when a nonresident defendant's employees had entered the forum to return purchased goods, "a mere one-time purchaser of goods from a seller in the forum state cannot be constitutionally subject to the exercise of [specific] personal jurisdiction by the courts of the forum state" on a contractual claim).

critical to due process analysis is not the mere likelihood that a product will find its way into the forum State"—or, in this case, that a service rendered by another company will cause injury to the defendant's customers. *Id.* at 297. "Rather, it is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *Id.*

The overseas acceptance of warranty repairs from an American company is not conduct such that J&B Tours reasonably should have anticipated being haled into a U.S. court on claims arising from subsequent injuries to third parties. And we may not ascribe the forum contacts of one co-defendant to another in determining the existence of personal jurisdiction. *See Rush v. Savchuk*, 444 U.S. 320, 331–33 (1980).

Notwithstanding the insubstantial relationship between J&B Tours' forum contacts and the claims in this case, the Frasers argue that considerations of "'fair play and substantial justice'" may here "serve to establish the reasonableness of jurisdiction upon a lesser showing of minimum contacts than would otherwise be required." *Burger King*, 471 U.S. at 477 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 320 (1945)). The barrier to exercising specific jurisdiction over J&B Tours in this case, however, is not a paucity of forum contacts. As we already have observed, J&B Tours' forum contacts may very well be

20

constitutionally sufficient to establish specific jurisdiction over claims adequately related to those contacts. The claims in this case, however, do not meet that standard. *Cf. World-Wide Volkswagen*, 444 U.S. at 294 ("Even if the defendant would suffer minimal or no inconvenience from being forced to litigate before the tribunals of another State; even if the forum State has a strong interest in applying its law to the controversy; even if the forum State is the most convenient location for litigation, the Due Process Clause, acting as an instrument of interstate federalism, may sometimes act to divest the State of its power to render a valid judgment." (citation omitted)). The district court's order granting J&B Tours' motion to dismiss is therefore

**AFFIRMED.**