[PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 21-12834

_____

HEREDEROS DE ROBERTO GOMEZ CABRERA, LLC,

Plaintiff-Appellant.

*versus*

TECK RESOURCES LIMITED,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:20-cv-21630-RNS

_____

Before NEWSOM, MARCUS, Circuit Judges, and COVINGTON,* District Judge.

NEWSOM, Circuit Judge:

In 1996, in response to the Cuban government's decades-old program of confiscating private property, Congress enacted the Cuban Liberty and Democratic Solidarity Act—commonly called the Helms-Burton Act. That statute broadly imposes liability on anyone who "traffics" in confiscated Cuban property to which a U.S. national has a claim. The plaintiff in this case, a Florida LLC called Herederos de Roberto Gomez Cabrera, sued a Canadian company, Teck Resources Limited, alleging that it had illegally trafficked in property to which Herederos says it has a claim. We hold that the federal courts don't have personal jurisdiction over Teck, and we therefore affirm the dismissal of Herederos's complaint.

## I

In 1960, the revolutionary Cuban government confiscated Roberto Gomez Cabrera's mineral mines. Cabrera's children, who inherited his claim to the mines, allege that Teck, a Canadian corporation, managed the mines and thereby "traffic[ked]" in them in violation of the Helms-Burton Act.

---

* Honorable Virginia M. Hernandez Covington, Senior United States District Judge for the Middle District of Florida, sitting by designation.

21-12834                    Opinion of the Court                    3

Cabrera's children assigned their claims to a Florida LLC, Herederos de Roberto Gomez Cabrera, and Herederos sued Teck under the Helms-Burton Act in the U.S. District Court for the Southern District of Florida. Broadly speaking, the Act imposes liability on "any person" who "traffics in property which was confiscated by the Cuban Government on or after January 1, 1959." 22 U.S.C. § 6082. Teck moved to dismiss for lack of personal jurisdiction. The district court granted Teck's motion, holding that Florida's long-arm statute didn't provide jurisdiction over Teck and, additionally, that Teck lacked the necessary connection to the United States to establish personal jurisdiction under Federal Rule of Civil Procedure 4(k)(2). For the reasons explained below, we agree with the district court.[1]

---

[1] We review the district court's dismissal for lack of personal jurisdiction de novo, accepting the allegations in the complaint as true. *See Don't Look Media LLC v. Fly Victor Ltd.*, 999 F.3d 1284, 1292 (11th Cir. 2021). "When a defendant submits non-conclusory affidavits to controvert the allegations in the complaint, the burden shifts back to the plaintiff to produce evidence to support personal jurisdiction." *Id.*

Teck separately contends that Herederos lacks Article III standing to sue. Because "there is no mandatory sequencing of jurisdictional issues," and because "in appropriate circumstances . . . [we] may dismiss for lack of personal jurisdiction without first establishing subject-matter jurisdiction," we resolve this case without addressing Herederos's standing. *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007) (citation and quotation marks omitted).

## II

As relevant here, the Federal Rules of Civil Procedure, which govern suits brought in federal court, explain that a district court may exercise personal jurisdiction over a defendant if "(A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and (B) exercising jurisdiction is consistent with the United States Constitution and laws." Fed. R. Civ. P. 4(k)(2). The parties here agree that Rule 4(k)(2)'s first condition applies—Teck isn't "subject to jurisdiction in any state's courts of general jurisdiction." Accordingly, we must decide whether exercising personal jurisdiction here would be "consistent with the . . . Constitution." For purposes of this case, the relevant constitutional provision—and we flag this issue because it gets to the nub of the parties' dispute—is the Fifth Amendment's Due Process Clause, which applies to the federal government and its courts, not the Fourteenth's, which applies to the states.[2]

---

[2] In the more usual case, we would assess whether jurisdiction would be proper under the Fourteenth Amendment because Rule 4(k)(1) authorizes personal jurisdiction in federal court over a person who "is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located." Fed. R. Civ. P. 4(k)(1)(A). Because state courts are limited by the Fourteenth Amendment, federal courts look through (in a manner of speaking) to that provision to determine whether a state court could exercise personal jurisdiction. *See Walden v. Fiore*, 571 U.S. 277, 283 (2014). Because the parties agree that no state court would have jurisdiction over Teck here, they ask us to assess jurisdiction under Rule 4(k)(2) instead.

Despite their agreement that the Fifth Amendment governs the personal-jurisdiction inquiry here, Herederos and Teck advance competing jurisdictional analyses. For its part, Teck contends that we should analyze personal jurisdiction under the Fifth Amendment the same way we would under the Fourteenth Amendment—*i.e.,* ask whether the defendant has sufficient "minimum contacts" with the forum and whether "maintenance of the suit [would] offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Wash.,* 326 U.S. 310, 316 (1945). Herederos, by contrast, urges us to apply a more lenient "arbitrary or fundamentally unfair" standard that we have sometimes used in what it calls "extraterritorial jurisdiction" cases. *See* Br. of Appellant at 15–16; Reply Br. of Appellant at 4. Although the language and logic of the "extraterritorial jurisdiction" cases can be a little confusing, those decisions, as we'll explain, aren't really about personal jurisdiction at all. Accordingly, we hold that courts should analyze personal jurisdiction under the Fifth Amendment using the same basic standards and tests that apply under the Fourteenth Amendment.

## A

We conclude that the personal-jurisdiction analysis under the Fifth Amendment is the same as that under the Fourteenth for three principal reasons.

*First*, and most importantly, the operative language of the Fifth and Fourteenth Amendments is materially identical, and it would be incongruous for the same words to generate markedly

different doctrinal analyses. *Compare* U.S. Const. amend. V ("No person shall be . . . deprived of life, liberty, or property, without due process of law."), *with* U.S. Const. amend. XIV, § 1 ("No State shall . . . deprive any person of life, liberty, or property, without due process of law.").

*Second*, this Court has all but held already that the Fifth Amendment's personal-jurisdiction analysis should track the Fourteenth's. *See Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1219 n.25 (11th Cir. 2009) ("As the language and policy considerations of the Due Process Clauses of the Fifth and Fourteenth Amendments are virtually identical, decisions interpreting the Fourteenth Amendment's Due Process Clause guide us in determining what due process requires in the Fifth Amendment jurisdictional context."); *see also SEC v. Marin*, 982 F.3d 1341, 1349 (11th Cir. 2020) (conducting "minimum contacts" analysis in case assessing personal jurisdiction under the Fifth Amendment); *Fraser v. Smith*, 594 F.3d 842, 850 (11th Cir. 2010) (same).

*Third*, adopting Herederos's preferred "arbitrary or fundamentally unfair" standard for Fifth Amendment cases—rather than the traditional minimum-contacts test—would create unnecessary tension with personal-jurisdiction precedents more generally. Fourteenth Amendment decisions have repeatedly emphasized the heavy burden faced by foreign defendants forced to litigate in U.S. courts, and there's no reason to think that those burdens are any lighter in cases governed by the Fifth Amendment. *See, e.g., Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 116 (1987)

(finding no jurisdiction over Japanese corporation partly because of the "the international context [and] the heavy burden on the alien defendant"); *Oldfield*, 558 F.3d at 1221 ("[I]n cases involving international defendants, courts should consider '[t]he unique burdens placed upon one who must defend oneself in a foreign legal system.'" (quoting *Asahi*, 480 U.S. at 114)).

For these fairly straightforward reasons, we think it makes eminent sense to apply the same basic personal-jurisdiction standards in cases arising under the Fifth Amendment as in those arising under the Fourteenth Amendment.

**B**

What, though, of the "extraterritorial jurisdiction" cases that Herederos cites? In those decisions, Herederos notes, we have said that "the extraterritorial application of the law must comport with due process, meaning that the application of the law must not be arbitrary or fundamentally unfair," *United States v. Noel*, 893 F.3d 1294, 1301 (11th Cir. 2018), and that the "Due Process Clause prohibits the exercise of extraterritorial jurisdiction over a defendant when it would be 'arbitrary or fundamentally unfair,'" *United States v. Baston*, 818 F.3d 651, 669 (11th Cir. 2016). But a close review of those cases shows that, in fact, they aren't really about *personal* jurisdiction at all; rather, at their core, they address what is sometimes called "legislative jurisdiction"—*i.e.*, the power of Congress (or another lawmaking body, as the case may be) to regulate conduct extraterritorially.

For instance, in *United States v. Ibarguen-Mosquera*, we looked to international law to determine whether Congress had constitutional authority to criminalize drug trafficking in international waters. *See* 634 F.3d 1370, 1378–79 (11th Cir. 2011). We held, in particular, that "the *enactment* of the [Drug Trafficking Vessel Interdiction Act] d[id] not offend the Due Process Clause" of the Fifth Amendment. *Id.* at 1379 (emphasis added). Similarly, in *Noel*, we examined an international treaty to determine whether Congress could criminalize a foreign defendant's actions under the federal Hostage Taking Act. *See* 893 F.3d at 1304. So too, in an earlier "extraterritorial jurisdiction" case, we held that defendants could be charged with a "general understanding of international law" and, consequently, that it didn't violate due process for Congress to criminalize drug offenses involving stateless vessels on the high seas. *See United States v. Marino-Garcia*, 679 F.2d 1373, 1384 n.19 (11th Cir. 1982).

To be sure, in some of the "extraterritorial jurisdiction" cases, we have analogized to personal-jurisdiction precedents or used language reminiscent of personal-jurisdiction analysis. *American Charities for Reasonable Fundraising Regulation, Inc. v. Pinellas County*, 221 F.3d 1211 (11th Cir. 2000) (per curiam), is illustrative. The question there was whether a Florida county could apply a charitable-solicitation regulation to individuals and entities who claimed that they engaged in little, if any, activity in the jurisdiction. We began by framing the question presented as one involving "legislative jurisdiction": "A state's legislative jurisdiction is

circumscribed by the Due Process Clause." *Id.* at 1216. In addressing that question, we noted, as relevant here, that "[t]he inquiry into whether sufficient legislative jurisdiction exists is similar to that explored in determining sufficient minimum contacts for the purposes of assessing whether a court can exercise personal jurisdiction consistent with due process." *Id.* (analogizing to concepts of "minimum contacts," "traditional notions of fair play and substantial justice," and "purposeful[] avail[ment]"); *see also, e.g., Gerling Glob. Reinsurance Corp. of Am. v. Gallagher*, 267 F.3d 1228, 1236 (11th Cir. 2001) (applying a personal-jurisdiction-like test to determine whether Florida could regulate a German company's conduct consistent with due process).

Be that as it may, the fact remains, as the Supreme Court has emphasized, that the "type of 'jurisdiction' relevant to determining the extraterritorial reach of a statute . . . is known as legislative jurisdiction, . . . *and is quite a separate matter from jurisdiction to adjudicate.*" *Hartford Fire Ins. Co. v. California*, 509 U.S. 764, 813 (1993) (quotation marks omitted) (emphasis added). Indeed, the Court observed in *Hartford* that the "extraterritorial reach of [a statute] has nothing to do with the jurisdiction of the courts" but, rather, "is a question of substantive law turning on whether, in enacting the [statute], Congress asserted regulatory power over the challenged conduct." *Id.*

The bottom line, then: The "extraterritorial jurisdiction" cases that Herederos cites are overwhelmingly (if not exclusively) concerned with legislative jurisdiction. None are personal-

jurisdiction cases in the traditional sense.  Herederos, it seems, asks us to decide the question of personal jurisdiction in this case by reference to the legislative-jurisdiction cases—thereby bringing to bear what it takes to be the more permissive "arbitrary or fundamentally unfair" standard.  But we don't need to reason, in essence, by analogy to another body of law.  We can and should just go straight to the source: the personal-jurisdiction cases themselves.

Accordingly, we conclude that the "arbitrary or fundamentally unfair" standard does not apply here.  We hold instead, to reiterate what we said in *Marin*—which, like this case, arose under the Fifth Amendment—that "[t]he exercise of personal jurisdiction comports with due process when (1) the nonresident defendant has purposefully established minimum contacts with the forum and (2) the exercise of jurisdiction will not offend traditional notions of fair play and substantial justice." 982 F.3d at 1349 (quotation marks omitted).  The lone difference between the Fifth and Fourteenth Amendments' due-process analyses is that "[w]here, as here, the Fifth Amendment applies . . . the applicable forum for minimum contacts purposes is the United States, not the state in which the district court sits."  *Id.* at 1349–50 (quotation marks omitted); *see also Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607, 619 (1992) (assessing whether Argentina purposefully availed itself of the "United States"); *Fraser*, 594 F.3d at 850 (assessing contacts with the United States).

### III

Applying the minimum-contacts test here is relatively straightforward. We hold that Teck doesn't have contacts with the United States sufficient to establish either specific or general personal jurisdiction over it.

### A

We start with specific personal jurisdiction. To establish a non-resident defendant's minimum contacts with a forum for specific-jurisdiction purposes, (1) the plaintiff's claim must "arise out of or relate to" one of the defendant's contacts in the forum, (2) the defendant must have "purposefully availed" itself of the privilege of conducting activities within the forum, and (3) jurisdiction must comport with "traditional notions of fair play and substantial justice." *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1355 (11th Cir. 2013).

Under the first prong, Herederos alleges that its claim arises out of Teck's contacts with the United States because Teck committed a tort that harmed Herederos in this country. To determine whether a defendant's conduct arose out of its contacts with the forum, "we look to the affiliation between the forum and the underlying controversy, *focusing on any activity or occurrence that took place in the forum*." *Waite v. All Acquisition Corp.*, 901 F.3d 1307, 1314 (11th Cir. 2018) (cleaned up) (emphasis added); *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1025 (2021) ("[T]here must be an affiliation between the forum and the

underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." (quotation marks omitted)).  Herederos alleged only that the *effects* of Teck's actions were felt in the United States—not that Teck engaged in any "activity or occurrence" in the United States.  The incidental effects of a defendant's actions are not by themselves sufficient to justify jurisdiction over the defendant in the forum.  *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 295–96 (1980) (finding no jurisdiction where the only contact was injury in the forum).[3]

---

[3] Consider two hypotheticals.  If Brian throws a baseball from Pennsylvania into Maryland and hits Clay in the head, some occurrence attributable to Brian—the baseball's movement—occurs in Maryland, and the effect—Clay's resulting injury—is likewise felt in Maryland.  In that case, Brian would be subject to jurisdiction in Maryland.  *See Ford*, 141 S. Ct. at 1025, 1027–29 (indicating that Ford's attempt to serve the Montana market by aggressively advertising there constituted an "activity or an occurrence" in Montana regardless of the fact that Ford wasn't itself physically present in the state); *Mosseri*, 736 F.3d at 1356 (holding due process satisfied where a defendant advertised, sold, and distributed trademark-infringing goods to Floridians from New York).  By contrast, if Connor sells Sakina a faulty rock-climbing harness in Virginia, and Sakina takes it with her to climb in the Red River Gorge in Kentucky and falls while using it there, no part of Connor's activity—selling the harness—occurs in Kentucky, even if the effect—Sakina's fall—occurs there.  In that case, Connor wouldn't be subject to jurisdiction in Kentucky.  *See Woodson*, 444 U.S. at 295–96.  This case is like the second hypo:  The harm might have been felt in the United States, but Teck didn't take any action in this country related to that harm.

For these reasons, Herederos's suit doesn't arise out of or relate to any of Teck's ties with the United States. And because a relationship between the defendant's conduct within the forum and the cause of action is necessary to exercise specific jurisdiction, the lack of any such relationship here dooms Herederos's effort to establish specific personal jurisdiction over Teck. *See Mosseri*, 736 F.3d at 1356; *Fraser*, 594 F.3d at 850 (noting, for purposes of a Rule 4(k)(2) specific-jurisdiction analysis, that "our inquiry must focus on the direct causal relationship among the defendant, the forum, and the litigation" (quotation marks omitted)). Because Herederos hasn't shown that its claim arose out of Teck's contacts with the United States, we needn't go on to address the secondary and tertiary questions whether Teck "purposefully availed" itself of the United States or whether exercising jurisdiction over it would offend "traditional notions of fair play and substantial justice."

## B

As for general jurisdiction, a "court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum." *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (quotation marks omitted). Traditionally, a corporation is "at home" in "its place of incorporation and principal place of business." *Ford*, 141 S. Ct. at 1024. Teck's principal place of business isn't in the United States, and it isn't incorporated here.

14                    Opinion of the Court                    21-12834

Nor, we conclude, are its other contacts sufficient to render it "at home" in the United States.

Herederos asserts that Teck is "at home" in the United States because it has subsidiaries that are U.S. corporations. In *Daimler*, the Supreme Court held that a foreign defendant's subsidiary's contacts with the forum were insufficient to establish the defendant's "at home" status. Herederos contends, though, that unlike in *Daimler*, where the subsidiary was not incorporated in the relevant forum and didn't have its principal place of business there, Teck's subsidiaries *are* incorporated in the United States and *do* have their principal places of business here. *See Daimler*, 571 U.S. at 139. Thus, Herederos says, Teck is "at home" in the United States.

We've recently held that a subsidiary's contacts can be attributed to its parent company for personal-jurisdiction purposes when "the subsidiary is merely an agent through which the parent company conducts business in a particular jurisdiction or its separate corporate status is formal only and without *any semblance of individual identity.*" *United States ex rel. v. Mortg. Invs. Corp.*, 987 F.3d 1340, 1355 (11th Cir. 2021) (quotation marks and citation omitted) (emphasis added). In other words, a subsidiary's contacts can justify jurisdiction over the parent when the subsidiary is a mere "alter ego" of the parent company. *See Daimler*, 571 U.S. at 134; *MIC*, 987 F.3d at 1354; *see also Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1272 (11th Cir. 2002).

Teck's subsidiaries can't fairly be described as its mere alter egos. "[T]here is no litmus test for determining whether a

subsidiary is the alter ego of its parent.  Instead, we must look to the totality of the circumstances.  Resolution of the *alter ego* issue is heavily fact-specific and, as such, is peculiarly within the province of the trial court." *United Steelworkers of Am., AFL-CIO-CLC v. Connors Steel Co.*, 855 F.2d 1499, 1506 (11th Cir. 1988).  Herederos points out that "[s]ome of Teck's corporate officers or leadership are also officers of Teck's U.S.- based subsidiaries," and that Teck "consolidates its financial statements with those of its US- subsidiaries."  Br. of Appellant at 4–5.  To be sure, those *are* factors courts use when assessing whether a subsidiary is an alter ego, *see Connors Steel Co.*, 855 F.2d at 1505, but they are not by themselves sufficient to establish a subsidiary's alter-ego status, *see Consol. Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1293 (11th Cir. 2000) ("Where the 'subsidiary's presence in the state is primarily for the purpose of carrying on its own business and the subsidiary has preserved some semblance of independence from the parent, jurisdiction over the parent may not be acquired on the basis of the local activities of the subsidiary.").  Here, the district court found that Teck's subsidiaries are independent of Teck, and the evidence supports that finding.  Teck's subsidiaries are legally distinct entities and observe all corporate formalities:  Each subsidiary has its own board of directors, officers, books of account, and separate taxes.  Based on the totality of the circumstances, Teck's subsidiaries can't be used to justify general jurisdiction over Teck.[4]

---

[4] Herederos also argues that the district court abused its discretion by refusing to allow Herederos to conduct jurisdictional discovery.  We disagree.

16                    Opinion of the Court                    21-12834

★   ★   ★

Herederos hasn't alleged facts sufficient to allow the United States courts to exercise either specific or general personal jurisdiction over Teck.[5]  Accordingly, we **AFFIRM**.

---

"[P]arties have a qualified right to jurisdictional discovery, meaning that a district court abuses its discretion if it completely denies a party jurisdictional discovery unless that party unduly delayed in propounding discovery or seeking leave to initiate discovery."  *ACLU of Fla., Inc. v. City of Sarasota*, 859 F.3d 1337, 1341 (11th Cir. 2017) (quotation marks and citations omitted).  Here, as the district court found, Herederos knew that jurisdiction over the defendant would be challenged, and it previously considered the need for jurisdictional discovery, yet it never moved for jurisdictional discovery.  Thus, Herederos "unduly delayed in . . . seeking leave to initiate discovery."  Furthermore, Herederos concedes that it "did not file a distinct and entirely independent motion to take jurisdictional discovery" as it was required to.  Br. of Appellant at 36; *see also* Fed R. Civ. P. 7(b)(1)(A) ("A request for a court order must be made by motion. The motion must be in writing unless made during a hearing or trial.").

[5] Teck also contends that Herederos failed to state a claim, but because we hold that the court lacked personal jurisdiction, we don't address the merits. *See In re Breland*, 989 F.3d 919, 923 (11th Cir. 2021).