572         December 19, 2013         No. 63

IN THE SUPREME COURT OF THE
STATE OF OREGON

Hilary P. ROBINSON,
*Petitioner on Review,*

*v.*

HARLEY-DAVIDSON MOTOR COMPANY,
an assumed business name for
Harley-Davidson Motor Company Group, LLC,
a foreign limited liability company,
fka Harley-Davidson Motor Company Group, Inc., et al.,
*Defendants,*

*and*

GRAND TETON HARLEY-DAVIDSON & BUELL,
an assumed business name for
Grand Teton Cycles, LLC,
an Idaho limited liability company,
*Respondent on Review.*

(CC 0904-05047; CA A143846; SC S060226)

En Banc

On review from the Court of Appeals.*

Argued and submitted April 30, 2013.

Kathryn H. Clarke, Portland, argued the cause and filed the brief for petitioner on review. With her on the brief were Michael L. Rosenbaum and Travis J. Mayor, Portland.

Janet M. Schroer, Hart Wagner, LLP, Portland, argued the cause for respondent on review. Majorie A. Speirs, Hart Wagner, LLP, Portland, filed the brief.

Cody Hoesly, Larkins Vacura LLP, Portland, filed the brief for *amicus curiae* Oregon Trial Lawyers Association.

_____

* On appeal from Multnomah County Circuit Court, Kathleen M. Dailey, Judge. 247 Or App 587, 270 P3d 367 (2012).

BALDWIN, J.

The decision of the Court of Appeals and the judgment of the circuit court are affirmed.

**BALDWIN, J.**

Plaintiff, an Oregon resident, sustained injuries in a motorcycle accident that occurred in Wyoming. She subsequently filed an action in Oregon seeking damages for her injuries, naming as a defendant Grand Teton Cycles, LLC, a Harley-Davidson franchisee with a physical presence in Idaho and Wyoming. The trial court determined that it lacked personal jurisdiction over defendant and granted defendant's motion to dismiss the complaint. The Court of Appeals affirmed. *Robinson v. Harley-Davidson Motor Co.*, 247 Or App 587, 270 P3d 367 (2012). We allowed plaintiff's petition for review to determine whether defendant, a nonresident, had sufficient contacts with Oregon for a court in this state to exercise specific jurisdiction over it. We conclude that this litigation did not arise out of or relate to defendant's activities in Oregon. However, we affirm for a different reason than expressed by the Court of Appeals, and, in so doing, we disavow the substantive relevance test to the extent that it was advanced in *State ex rel Michelin v. Wells*, 294 Or 296, 657 P2d 207 (1982).

## I.  BACKGROUND

Defendant is an Idaho-registered limited liability company that owns and operates Harley-Davidson dealership franchises. Under the terms of its franchise agreement with Harley-Davidson, defendant operates two dealerships in Idaho—in Idaho Falls and Pocatello—and one dealership in Jackson Hole, Wyoming. Oregon is not included within defendant's "Dealer Assigned Territory" under the terms of its franchise agreement with Harley-Davidson. Nor does defendant maintain a physical presence or maintain bank accounts, officers, employees, or agents within Oregon.

Defendant has sold motorcycles, rentals, and services to Oregon residents who have visited its franchise locations, and it has purchased merchandise from, and sold merchandise to, Harley-Davidson dealerships in Oregon. On isolated occasions, defendant has sold parts and accessories to Oregon residents by orders placed through its interactive website, which is accessible to customers worldwide. On its website, defendant advertises motorcycle sales, repair services, sales of parts and accessories, sponsorship information

for local events, and promotions for out-of-state residents to fly to Idaho to purchase motorcycles. Harley-Davidson also separately promotes defendant's franchise locations in its touring handbook, which is distributed nationally and lists all Harley-Davidson dealerships in the United States. In addition, defendant annually advertises in a few trade publications. Defendant's revenue from sales of accessories, parts, services, and rentals to Oregon residents and Oregon dealerships between the years 2002 and 2009 totaled, on average, approximately $60,000 per year. Although some of that revenue was attributable to sales to Oregon residents that occurred through defendant's online website, nearly all transactions involving Oregon residents occurred in Idaho.

In 2004, plaintiff purchased a Harley-Davidson motorcycle from Latus Motors Harley-Davidson (Latus Motors), a dealership in Gladstone, Oregon. Thereafter, she regularly returned to Latus Motors for service and warranty repairs on the motorcycle. Before the accident that gave rise to this litigation, plaintiff also visited defendant's Idaho Falls dealership on two occasions. Plaintiff first stopped at the dealership in 2004 while driving through Idaho, having learned of it through friends and the Harley-Davidson touring handbook. In 2006, she visited the dealership again while attending an Idaho-based motorcycle rally that defendant sponsored. Plaintiff visited defendant's website to register for the 2006 rally.

In early August 2007, Latus Motors serviced plaintiff's motorcycle and installed new tires. A few days later, plaintiff departed on a multistate motorcycle tour. While riding in Idaho, the front end of plaintiff's motorcycle began to "wobble" at highway speeds. Plaintiff took the motorcycle to defendant's Idaho Falls dealership to address the front-end stability problem. Defendant's employee examined the motorcycle and completed warranty repairs. The next day, in Wyoming, plaintiff was riding the motorcycle at highway speeds when it again began to "wobble." The motorcycle went into an uncontrollable front-end weave, and plaintiff was thrown off the motorcycle and injured.

Plaintiff subsequently commenced an action in Multnomah County Circuit Court against the motorcycle

manufacturer, two dealerships that had serviced the motorcycle, including defendant, and two parts manufacturers, alleging claims for products liability, negligent repair, breach of warranty, and other claims. As relevant to defendant, plaintiff specifically alleged that defendant failed to properly diagnose and repair the cause of the front-end problem, failed to contact Harley-Davidson for repair instructions or instruct its employees on proper repairs, and failed to notify plaintiff that the motorcycle could continue to experience a high-speed "wobble."

Defendant filed a motion to dismiss plaintiff's complaint pursuant to ORCP 21 A(2), asserting that the trial court lacked personal jurisdiction over defendant. After hearing the parties' arguments, the trial court concluded that it lacked personal jurisdiction and granted defendant's motion to dismiss. The trial court entered a limited judgment, and plaintiff appealed. The Court of Appeals affirmed that judgment, and we granted review to address the jurisdictional issue presented in this case.

In reviewing a trial court's ruling on a motion to dismiss for lack of personal jurisdiction, we consider the facts as alleged in plaintiff's complaint, any relevant supporting affidavits, and other evidence submitted by the parties. *Willemsen v. Invacare Corp.*, 352 Or 191, 195 n 2, 282 P3d 867 (2012), *cert den*, ___ US ___, 133 S Ct 984 (2013); *see also* ORCP 21 A (providing that a trial court considering a motion to dismiss for lack of personal jurisdiction may rely on the pleadings, affidavits, declarations, and other evidence). The burden is on the plaintiff to allege and prove facts sufficient to establish jurisdiction over a particular defendant. *Michelin*, 294 Or at 299 (citing *State ex rel Sweere v. Crookham*, 289 Or 3, 6, 609 P2d 361 (1980)). In this case, the jurisdictional facts are undisputed.

Oregon's long-arm statute, ORCP 4, sets out the grounds for an Oregon court to exercise jurisdiction over an out-of-state defendant in a civil case. The rule outlines five general bases for establishing personal jurisdiction under ORCP 4 A, enumerates several more specific bases for personal jurisdiction under ORCP 4 B through K, and also provides a catchall provision under ORCP 4 L that

confers jurisdiction to the extent permitted by due process. *State ex rel Circus Circus Reno, Inc. v. Pope*, 317 Or 151, 154-56, 854 P2d 461 (1993); *see also Goodyear Dunlop Tires Operations, S.A. v. Brown*, ___ US ___, ___, 131 S Ct 2846, 2850, 180 L Ed 2d 796 (2011) ("A state court's assertion of jurisdiction exposes defendants to the State's coercive power, and is therefore subject to review for compatibility with the Fourteenth Amendment's Due Process Clause.").

Although plaintiff asserted at trial that defendant's contacts—particularly its presence through its interactive website—were sufficient to establish jurisdiction in accordance with ORCP 4 A, plaintiff does not reprise that argument before this court. Plaintiff also does not invoke any basis for jurisdiction enumerated in ORCP 4 B through K. Rather, plaintiff asserts that, pursuant to ORCP 4 L, defendant's contacts with this state were sufficient to permit an Oregon court to exercise jurisdiction over defendant to the extent permitted by this state's constitution and the Constitution of the United States.[1] *See State ex rel Hydraulic Servocontrols v. Dale*, 294 Or 381, 384, 657 P2d 211 (1982) (ORCP 4 L confers jurisdiction to the "outer limits of due process"). Because Oregon does not have a due process clause in its constitution that would impose a state constitutional limit on jurisdiction, we are guided by decisions of the Supreme Court of the United States that address the constitutionality of an invocation of jurisdiction under the Due Process Clause of the Fourteenth Amendment to the United States Constitution.[2] *Circus Circus*, 317 Or at 156.

Under Supreme Court jurisprudence, an exercise of jurisdiction over a nonresident defendant comports with due process if there exists "minimum contacts" between the

___

[1] Oregon's catchall provision, ORCP 4 L, provides that an Oregon court has jurisdiction:

"Notwithstanding a failure to satisfy the requirement of sections B through K of this rule, in any action where prosecution of the action against a defendant in this state is not inconsistent with the Constitution of this state or the Constitution of the United States."

[2] The Due Process Clause provides:

"[N]or shall any State deprive any person of life, liberty, or property, without due process of law ***."

US Const, Amend XIV, § 1.

defendant and the forum state such that maintaining suit in the state would "not offend traditional notions of fair play and substantial justice." *World-Wide Volkswagen Corp. v. Woodson*, 444 US 286, 291-92, 100 S Ct 559, 62 L Ed 2d 490 (1980) (internal quotation marks omitted); *see also International Shoe Co. v. Washington*, 326 US 310, 316, 66 S Ct 154, 90 L Ed 95 (1945) ("[D]ue process requires only that in order to subject a defendant to a judgment *in personam*, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"). Due process is thus satisfied if "the defendant's conduct and connection with the forum State are such that he [or she] should reasonably anticipate being haled into court there." *World-Wide Volkswagen*, 444 US at 297.

In applying that test, the Supreme Court has recognized that jurisdiction over a nonresident may be either general or specific. *Goodyear*, ___ US at ___, 131 S Ct at 2851; *see also Burger King Corp. v. Rudzewicz*, 471 US 462, 472, 473 n 15, 105 S Ct 2174, 85 L Ed 2d 528 (1985) (noting distinction between general and specific jurisdiction); *see Willemsen*, 352 Or at 197.[3] General jurisdiction exists when the defendant's affiliations with the forum state "are so 'continuous and systematic'" as to render the defendant "essentially at home in the forum State." *Goodyear*, ___ US at ___, 131 S Ct at 2851; *see Willemsen*, 352 Or at 197. Stated differently, general jurisdiction is present in "'instances in which the continuous *** operations within a state [are] so substantial and of such a nature as to justify suit against [the defendant] on causes of actions arising from dealings entirely distinct from those activities.'" *Goodyear*, ___ US ___, 131 S Ct at 2853 (first alteration in original; quoting *International Shoe*, 326 US at 318). In abandoning her ORCP 4 A argument, plaintiff has

---

[3] The bases for jurisdiction outlined under ORCP 4 A mirror the continuous and systematic ties supporting a finding of general jurisdiction as contemplated under due process jurisprudence, whereas the bases for jurisdiction enumerated under the remaining provisions of ORCP 4 reflect more discrete affiliations and activities that may give rise to specific jurisdiction. *See Circus Circus*, 317 Or at 154-55 (noting the distinction between "general" and "specific" jurisdiction under ORCP 4); *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 US 408, 414 nn 8, 9, 104 S Ct 1868, 80 L Ed 2d 404 (1984) (explaining the difference between general and specific long-arm jurisdiction).

effectively abandoned her argument that defendant's contacts were so continuous and systematic as to constitute a basis for general jurisdiction. Instead, plaintiff seeks to assert specific jurisdiction over defendant.

Specific jurisdiction "depends on an 'affiliatio[n] between the forum and the underlying controversy,' principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Goodyear*, ___ US at ___, 131 S Ct at 2851 (alteration in original); *see Willemsen*, 352 Or at 197. In other words, specific jurisdiction "is confined to adjudication of 'issues deriving from, or connected with, the very controversy that establishes jurisdiction.'" *Goodyear*, ___ US at ___, 131 S Ct at 2851 (quoting von Mehren & Trautman, *Jurisdiction to Adjudicate: A Suggested Analysis*, 79 Harv L Rev 1121, 1136 (1966)).

The analytical framework for determining whether specific jurisdiction exists consists of three inquiries. *See Circus Circus*, 317 Or at 159-60 (laying out analytical framework). First, the defendant must have "purposefully avail[ed] itself of the privilege of conducting activities within the forum State." *Hanson v. Denckla*, 357 US 235, 253, 78 S Ct 1228, 2 L Ed 2d 1283 (1958). The requirement that a defendant purposefully direct activity to the forum state precludes the exercise of jurisdiction over a defendant whose affiliation with the forum state is "random," "fortuitous," or "attenuated," or the "unilateral activity of another party or a third person." *Burger King*, 471 US at 475 (internal citation marks omitted); *see also State ex rel Jones v. Crookham*, 296 Or 735, 741-42, 681 P2d 103 (1984) (requirements of due process not met when defendant's contacts with Oregon are "minimal and fortuitous").

Second, the action must "arise out of or relate to" the foreign defendant's "activities in the forum State." *Helicopteros Nacionales de Colombia, S.A., v. Hall*, 466 US 408, 414, 104 S Ct 1868, 80 L Ed 2d 404 (1984); *Burger King*, 471 US at 472. Stated differently, for an exercise of specific jurisdiction to be valid, there must be "a 'relationship among the defendant, the forum, and the litigation.'" *Helicopteros*, 466 US at 414 (quoting *Shaffer v. Heitner*, 433 US 186, 204, 97 S Ct 2569, 53 L Ed 2d 683 (1977)). In further explaining that

relationship, the Supreme Court recently highlighted two means by which specific jurisdiction attaches: Jurisdiction may attach if a party engages in "activity [that] is continuous and systematic and *that activity gave rise to the episode-in-suit.*" *Goodyear*, ___ US at ___, 131 S Ct at 2853 (internal quotation marks omitted; emphasis in original). Jurisdiction may also attach if a party's "certain single or occasional acts in a State [are] sufficient to render [him or her] answerable in that State with respect to those acts, though not with respect to matters unrelated to the forum connections." *Id.* (internal quotation marks omitted). Thus, as articulated by the Court, an exercise of specific jurisdiction is appropriate in cases where the controversy at issue "derive[s] from, or connect[s] with" a defendant's forum-related contacts. *Id.* at ___, 131 S Ct at 2851.

Finally, a court must examine whether the exercise of jurisdiction over a foreign defendant comports with fair play and substantial justice, taking into account various factors deemed relevant, including an evaluation of the burden on a defendant, the forum state's interest in obtaining convenient and effective relief, the interstate judicial system's interest in efficient resolution of controversies, and furthering fundamental social policies. *Asahi Metal Industry Co. v. Superior Court*, 480 US 102, 113, 107 S Ct 1026, 94 L Ed 2d 92 (1987); *Burger King*, 471 US at 476-77; *see Circus Circus*, 317 Or at 159-60.

Here, the trial court found that defendant purposefully availed itself of the benefits and protections of this state, but that its contacts did not arise out of or relate to this litigation. Although defendant asserted before the Court of Appeals that its activities did not fulfill the "purposeful availment" prong of the test, the Court of Appeals declined to reach that issue, because it determined that the "arise out of or relate to" requirement was not met. *Robinson*, 247 Or App at 592. In doing so, the Court of Appeals applied what has been labeled the "substantive relevance" test, which led the Court of Appeals "to the same conclusion that the trial court reached. No fact relevant to the substance of plaintiff's negligence claim occurred in Oregon."[4] *Id.* at 593.

---

[4] In following a substantive relevance test below, the Court of Appeals recognized that this court, in *Michelin*, referenced but "did not expressly adopt

On review, plaintiff challenges the Court of Appeals' conclusion that defendant's contacts did not arise out of or relate to the events that give rise to this litigation. Defendant likewise focuses its arguments on that "relatedness inquiry." Because the issue of whether this litigation arose out of or was related to defendant's forum contacts was central to the Court of Appeals' holding in this case, and because that issue is dispositive, we limit our review to that issue. The question on review, then, is whether the substantive relevance test adopted by the Court of Appeals is an appropriate standard under federal law for determining if the "arising out of or relating to" requirement supports the exercise of specific jurisdiction. *See Circus Circus*, 317 Or at 156 (drawing outer limits of due process under the Fourteenth Amendment is an issue of federal law to be decided pursuant to the controlling decisions of the United States Supreme Court). We now turn to that question.

## II. ANALYSIS

Although the imposition of specific jurisdiction requires a significant nexus between a claim and a defendant's contacts within the state for the exercise of state court jurisdiction, the Supreme Court has allowed lower courts to determine, on a fact-intensive basis, whether the strength of that

---

'substantive relevance' as the test for 'arising out of or relating to.'" *Robinson*, 247 Or App at 592. In making that observation, the Court of Appeals noted that "the United States Supreme Court did not announce [the "arising out of or relating to"] aspect of minimum contacts until *Burger King*," which was decided three years after *Michelin*. *Id.* However, as the Court of Appeals went on to explain, in *Horn v. Seacatcher Fisheries, Inc.*, 128 Or App 585, 876 P2d 352, *rev den*, 320 Or 407 (1994), *cert dismissed*, 514 US 1048 (1995), it had adopted the substantive relevance test and applied it to the "arising out of or relating to" aspect of ORCP 4 L:

> "In *Horn*, the defendant, a Washington corporation, recruited and hired plaintiff, an Oregon resident, in Oregon, to work on its fishing vessel in Alaska. [128 Or App] at 587. The plaintiff was allegedly injured while working on the vessel. *Id.* Citing *State ex rel Michelin* and the substantive relevance test taken from the Brilmayer law review article, [the court] reasoned that, although the plaintiff would not have been aboard the vessel but for the defendant's recruiting and hiring activities in Oregon, his alleged injuries arose out of and related to the defendant's alleged negligence in Alaska and in international waters, not in Oregon. *Id.* at 589-90. Thus, [the court] held the plaintiff's claim did not arise out of or relate to the defendant's hiring and recruiting activities in Oregon. *Id.* at 591."

*Robinson*, 247 Or App at 592-93.

nexus in particular cases is sufficient to comport with due process. The Court has not otherwise defined the scope of its "arise out of or relates to" requirement.[5] To fill in that gap, some lower federal courts and state courts, in applying that requirement, have adopted various approaches to test the sufficiency of forum contacts. The tests fall into four basic categories: (1) substantive relevance, (2) but-for causation, (3) substantial connection, and (4) a combined but-for and foreseeability of litigation test.

We take this opportunity to examine those standards in light of the Supreme Court's more recent jurisdictional jurisprudence and, as explained in more detail below, we now conclude that the substantive relevance test is an inappropriately rigid formulation. We also reject the but-for test and substantial connection test, because those tests do not adequately describe the due process standards for exercising specific jurisdiction as articulated by the Supreme Court. Instead, we consider the combined but-for and foreseeability of litigation test to be the most appropriate approach. We will address each test in turn.

A.   *Substantive relevance test*

In applying the "arises out of or relates to"—also referred to as the "relatedness"—requirement, a number of courts have adopted a substantive relevance or proximate cause test that examines whether any of the defendant's contacts with the forum are relevant to the merits of the plaintiff's claim. The substantive relevance test has been described as the most stringent approach. It was summarized in *O'Connor v. Sandy Lane Hotel Co., Ltd.*, 496 F3d 312, 318 (3d Cir 2007), as follows:

---

[5] In discussing its use of the terms "arise out of" and "relate to" in *Helicopteros*, the Court expressly declined to consider (1) whether the terms "arising out of" and "relate to" describe different connections between a cause of action and a defendant's contacts with a forum, and (2) what sort of tie between a cause of action and a defendant's contacts with a forum is necessary to a determination that either connection exists. 466 US at 415 n 10; *see also id.* at 425-27 (Brennan, J., dissenting) (calling for a distinction between the phrases). The Supreme Court granted *certiorari* on the scope of the "arise out of or relate to" requirement in *Carnival Cruise Lines, Inc. v. Shute*, 499 US 585, 111 S Ct 1522, 113 L Ed 2d 622 (1991), but ultimately decided the case on other grounds.

"The most restrictive standard is the 'proximate cause' or 'substantive relevant' test. Courts have articulated this test in a variety of ways. Some hold the defendant's contacts must be the 'legal cause' of the plaintiff's injury '(*i.e.*, the defendant's in-state conduct [must] g[i]ve birth to the cause of action).' *See, e.g., Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n*, 142 F3d 26, 35 (1st Cir 1998) (quotation marks omitted). Justice Brennan, dissenting in *Helicopteros*, similarly described it as a requirement that 'the cause of action *** formally "arise out of" the [defendant's] contacts.' *See Helicopteros*, 466 US at 426-27, 104 S Ct 1868 (Brennan, J., dissenting). But stated most simply, this test examines whether any of the defendant's contacts with the forum are relevant to the merits of the plaintiff's claim. *See* Lea Brilmayer, *How Contacts Count: Due Process Limitations on State Court Jurisdiction*, 1980 Sup Ct Rev 77, 82-83."

(Alterations and omission in original; footnote omitted.)

In *Michelin*, 294 Or 296, we applied a substantive relevance standard to determine whether a nonresident defendant's contacts with this state were sufficient for the exercise of personal jurisdiction. We rejected the assertion that the mere existence of general sales or use of a defendant's products in Oregon constituted "minimum contacts" sufficient to establish specific jurisdiction over that defendant. The plaintiff, an Oregon corporation, brought a suit in Oregon against the foreign defendant, Michelin France, seeking property damages resulting from the explosion of an allegedly defective tire. Michelin France, however, had no direct presence in Oregon. Rather, it manufactured tires in France and had sold its tires to two United States purchasers, which then distributed the tires nationally.

In *Michelin*, we stated that our purpose was to "consider for the first time the reach of Oregon's long-arm statute, ORCP 4, and the implication of *World-Wide Volkswagen*." *Michelin*, 294 Or at 298. In *World-Wide Volkswagen*, the United States Supreme Court had recently affirmed that, under the Due Process Clause, "a state court may exercise personal jurisdiction over a nonresident defendant only so long as there exist 'minimum contacts' between the defendant and

the forum State." 444 US at 291 (quoting *International Shoe*, 326 US at 316). The Court reviewed previously established principles and rejected the argument that jurisdiction may be proper if it is merely foreseeable; instead, the court emphasized that

> "the foreseeability that is critical to due process analysis is not the mere likelihood that a product will find its way into the forum State. Rather, it is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there. The Due Process Clause, by ensuring the orderly administration of the laws, gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit.
>
> "When a corporation purposefully avails itself of the privilege of conducting activities within the forum State, it has clear notice that it is subject to suit there[.]"

*World-Wide Volkswagen*, 444 US at 297 (internal quotation marks and citation omitted). Thus, the focus in *World-Wide Volkswagen* was on the purposeful nature of the defendant's forum contacts, not whether those contacts were related to the litigation.

This court applied the principles of *World-Wide Volkswagen* in *Michelin* and concluded that Michelin France's contacts with Oregon were, as a matter of due process, insufficient for Oregon courts to exercise jurisdiction. We concluded that "[t]he mere existence of general sales or use of Michelin France's products in Oregon is not enough for Oregon jurisdiction." *Michelin*, 294 Or at 301. In reaching that conclusion, this court determined that "minimum contacts" between a defendant and a forum state are not established unless at least one contact with the forum state is substantively relevant to the cause of action. *Id.* at 302 (citing Lea Brilmayer, *How Contacts Count: Due Process Limitations on State Court Jurisdiction*, 1980 Sup Ct Rev 77, 82-83 (1980)). We observed that "no fact of substantive relevance, such as sale, use, accident[,] or injury has been shown to have occurred in Oregon," and we concluded that

the plaintiff had failed to demonstrate that Michelin France was subject to the trial court's jurisdiction. *Id.* at 303.

Plaintiff, joined by *amicus curiae* Oregon Trial Lawyers Association (OTLA), now challenges this court's analysis in *Michelin* to the extent that we advanced a substantive relevance test for specific jurisdiction. Both plaintiff and OTLA emphasize that *Michelin* was decided before the Supreme Court fully articulated the "arise out of or relates to" standard, which they suggest permits a looser affiliation with the forum state than had previously been provided when we decided *Michelin*.

Those arguments are well-taken. Given the timing of *Michelin*, this court's analysis in that matter was heavily informed by *World-Wide Volkswagen*'s purposeful availment precepts. However, *World-Wide Volkswagen* and our analysis in *Michelin* predated the Supreme Court's decisions in *Helicopteros* and *Burger King*, in which the Court more fully articulated the "arise out of or relates to" requirement that is now an aspect of the specific jurisdiction inquiry. The timing of those decisions, therefore, renders the substantive relevance analysis in *Michelin* incomplete. The Eighth Circuit also has addressed this conundrum. In *Myers v. Casino Queen, Inc.*, 689 F3d 904 (8th Cir 2012), the court noted that its earlier decision in *Pearrow v. National Life & Acc. Ins. Co.*, 703 F2d 1067 (8th Cir 1983), had been improperly cited by a circuit court for the proposition that the Eighth Circuit had adopted the substantive relevance or proximate cause standard as a jurisdictional test. The court observed:

> "*Pearrow* predated the Supreme Court's decisions in *Helicopteros* and *Burger King* and could not possibly involve an application of the 'arise out of or relate to' requirement of a constitutional due process analysis articulated in those cases.
>
> "Although our cases have not clearly stated our position, we have not restricted the relationship between a defendant's contacts and the cause of action to a proximate cause standard."

*Myers*, 689 F3d at 912. Thus, like the Eighth Circuit in *Pearrow*, this court, in deciding *Michelin*, did not have

occasion to consider the ramifications of a substantive relevance approach with respect to the relatedness standard as announced by the Supreme Court in *Helicopteros* and *Burger King*. As we have previously stated, "this court is willing to reconsider cases when the legal or factual context has changed in such a way as to seriously undermine the reasoning or result of earlier cases." [*Farmers Ins. Co. v. Mowry*](), 350 Or 686, 698, 261 P3d 1 (2011); *see also Holcomb v. Sunderland*, 321 Or 99, 105, 894 P2d 457 (1995) (reexamination of prior statutory construction appropriate when stated basis for earlier construction no longer applies).

Since *Helicopteros* and *Burger King* were decided, many federal courts have reconsidered the substantive relevance standard, and several circuits have abandoned that test in favor of tests that more closely reflect the Supreme Court's jurisdictional framework. In *Nowak v. Tak How Investments, Ltd.*, 94 F3d 708, 715 (1st Cir 1996), *cert den*, 520 US 1155 (1997), for example, the First Circuit relaxed its substantive relevance or proximate cause standard because it concluded that "strict adherence to a proximate cause standard in all circumstances is unnecessarily restrictive." The plaintiff in *Nowak* brought a wrongful death diversity action against the defendant, a foreign owner of a hotel in Hong Kong, after the plaintiff's wife drowned in the hotel's swimming pool. The defendant had solicited the travel business from the plaintiff's employer in the forum state following an extensive exchange of communications about travel arrangements, including the promotion of the swimming pool as an attraction. Notwithstanding the absence of a proximate cause relationship (the solicitation of travel business did not cause the wrongful death), the court found specific jurisdiction based on a "meaningful link" between the defendant's contacts and the harm suffered. *Id.* at 716. In relaxing its proximate cause standard in that way, the court explained that "such flexibility is necessary in the jurisdictional inquiry." *Id.* The court moreover recognized that

> "[I]t will not always be easy to apply this flexible approach to particular circumstances, but that is the function of the complexity of this area of the law. The jurisdictional inquiry is often a difficult fact specific analysis in which

'[t]he greys are dominant and even among them the shades are innumerable.'"

*Id.* (quoting *Pleasant Street*, 960 F2d at 1088 (citing *Estin v. Estin*, 334 US 541, 545, 68 S Ct 1213, 92 L Ed 1561 (1948))). *See also Miller Yacht Sales, Inc. v. Smith*, 384 F3d 93, 100 (3d Cir 2004) (rejection of proximate cause test in favor of "approach[ing] each case individually and tak[ing] a 'realistic approach' to analyzing a defendant's contacts with a forum"); *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F3d 1063, 1078 (10th Cir 2008) (calling the proximate cause test "considerably more restrictive" than other approaches); *Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F3d 1210, 1222 n 32 (11th Cir 2009) (criticizing substantive relevance test as "somewhat rigid"); *Myers*, 689 F3d at 912-13 (disavowing proximate cause test).

We too are persuaded that the substantive relevance test is mechanical and rigid. By requiring that at least one of a defendant's contacts with the forum be relevant to the merits of a plaintiff's claim, the substantive relevance test focuses exclusively on the "arise out of" aspect of the Supreme Court's test requiring that an action either "arise out of" or "relate to" the defendant's contacts with the state. The substantive relevance test creates a bright-line rule for what the Supreme Court has announced as a fact-specific inquiry into the reasonableness of state court jurisdiction. *See Helicopteros*, 466 US at 414; *Burger King*, 471 US at 472-73; *see also Kulko v. California Superior Court*, 436 US 84, 92, 98 S Ct 1690, 56 L Ed 2d 132 (1978) (in applying the minimum contacts test, "the facts of each case must be weighed to determine whether the requisite 'affiliating circumstances' are present"). The Supreme Court has rejected the use of such mechanical or absolute approaches in personal jurisdiction cases and has explained that, in this area, "few answers will be written in black and white." *Kulko*, 436 US at 92 (internal quotation marks omitted); *see also International Shoe*, 326 US at 319 (rejecting the use of "mechanical or quantitative" tests). Moreover, although the substantive relevance test provides a high level of predictability, a strict application of the test too severely limits this state's ability to advance its interest in adjudicating

the disputes of its residents in instances in which personal jurisdiction may properly be exercised. *See Burger King*, 471 US at 477-78. We therefore disavow *Michelin* insofar as it can be read to approve of a substantive relevance test.

B.   *But-for test*

A number of other courts applying the relatedness standard have adopted a "but-for" test, under which specific jurisdiction will be found if the claim would not have arisen "but for" the defendant's forum-related activities. That approach also is fairly summarized in *O'Connor*:

> "A second, more relaxed test requires only 'but-for' causation. As the name indicates, this standard is satis-fied when the plaintiff's claim would not have arisen in the absence of the defendant's contacts. *See, e.g.*, *Shute v. Carnival Cruise Lines*, 897 F2d 377, 385-86 (9th Cir 1990), *rev'd on other grounds* 499 US 585, 111 S Ct 1522, 113 L Ed 2d 622 (1991).[8] In *Shute*, for example, two Washingtonians booked a Carnival cruise through a travel agent, and during the cruise one of them 'slipped on a deck mat.' *See id.* at 379. Carnival provided brochures to travel agencies in Washington, and it also held seminars for Washington travel agents. *Id.* These contacts satisfied the but-for test because, '[i]n the absence of Carnival's activity, the Shutes would not have taken the cruise, and Mrs. Shute's injury would not have occurred.' *Id.* at 386.

──────────

> "[8] *See also Lanier v. Am. Bd. of Endodontics*, 843 F2d 901, 909 (6th Cir 1988) (applying a 'made possible by' stan-dard); *Deluxe Ice Cream Co. v. R.C.H. Tool Corp.*, 726 F2d 1209, 1216 (7th Cir 1984) (applying a 'lies in the wake of' test); *Prejean v. Sonatrach, Inc.*, 652 F2d 1260, 1270 n 21 (5th Cir 1981) ('In a case like this, the contractual contact is a "but for" causative factor for the tort since it brought the parties within tortious "striking distance" of each other.'); *Tatro v. Manor Care, Inc.*, 416 Mass 763, 625 NE2d 549, 552-55 (1994) (interpreting the Massachusetts long-arm statute to adopt a but-for test and holding that the statute is constitutional)."

*O'Connor*, 496 F3d at 319.

    In *Circus Circus*, 317 Or 151, this court had occasion to determine whether Circus Circus, an out-of-state corporation, could be compelled to appear in Oregon to answer an action seeking damages for personal injuries sustained at a Reno, Nevada hotel that Circus Circus owned and operated. Circus Circus was not registered to do business and paid no taxes in Oregon, and it had no bank accounts, offices, employees, or exclusive agents in this state. Following the direction of *Burger King*, this court first determined that Circus Circus purposefully directed its activities at this state when it placed advertisements for its Reno facility in a major Oregon newspaper, supplied brochures to Oregon travel agents, provided Oregon residents a toll-free telephone service line, and telephoned the plaintiff's Oregon residence to confirm his hotel reservation.

    We then concluded, however, that the plaintiff's "negligence claim against Circus Circus [did] not 'arise out of or [relate] to' the activities of Circus Circus in Oregon." *Id.* at 160 (citing *Burger King*, 471 US at 472-73). We emphasized that the plaintiff "alleged that [his] injury resulted from Circus Circus's negligence in various respects relating solely to the operation of its hotel in Nevada," and held that the injury did not sufficiently relate to defendant's activities in Oregon in order to sustain jurisdiction in this state. *Id.* at 160-61. In reaching that conclusion, we explicitly rejected the "but-for" test advanced in the Ninth Circuit's opinion in *Shute* because "[t]he Supreme Court of the United States does not apply a 'but for' test, and our reading of the pertinent Supreme Court cases convinces us that the Supreme Court would not do so." *Id.* at 161.

    We again reject the "but-for" test for relatedness as overinclusive. First, in its more recent jurisprudence, the Supreme Court has not been inclined to adopt a mechanical or absolute approach to determine the sufficiency of a nonresident defendant's forum contacts. *See J. McIntyre Machinery, Ltd. v. Nicastro*, ___ US ___, ___, 131 S Ct 2780, 2793, 180 L Ed 2d 765 (2011) (Breyer, J., concurring) (rejecting the application of an "absolute approach" that would abandon "the heretofore accepted inquiry of whether, focusing upon the relationship between 'the defendant, the *forum*,

and the litigation,' it is fair, in light of the defendant's contacts *with that forum*, to subject the defendant to suit there" (emphasis in original; quoting *Shaffer*, 433 US at 204)); *see also Willemsen*, 352 Or at 200-01 (adopting Justice Breyer's approach). Moreover, in this context, the but-for test is overinclusive because it pays too much regard to the state's interest in adjudicating disputes and too little regard to whether litigation in a forum state is reasonably foreseeable by a nonresident defendant. As explained in *O'Connor*,

> "[A]lthough the analysis may begin with but-for causation, it cannot end there. *** Out-of-state residents who 'exercise[] the privilege of conducting activities within a state *** enjoy[] the benefits and protection of' the state's laws; in exchange, they must submit to jurisdiction over claims that arise from or relate to those activities. But-for causation cannot be the sole measure of relatedness because it is vastly overinclusive in its calculation of a defendant's reciprocal obligations. The problem is that it 'has *** no limiting principle; it literally embraces every event that hindsight can logically identify in the causative chain.' If but-for causation sufficed, then defendants' jurisdictional obligations would bear no meaningful relationship to the scope of the 'benefits and protection' received from the forum."

496 F3d at 322 (alterations and omissions in original; internal citations omitted).

C.  *Substantial connection test*

A third approach taken by courts looks for a substantial connection or discernible relationship between the plaintiff's claim and the defendant's contacts. That approach does not focus on causation but instead examines

> "whether the tie between the defendant's contacts and the plaintiff's claim is close enough to make jurisdiction fair and reasonable. *** *See Chew*, 143 F3d at 29; *see also Shoppers*, 746 A2d at 336 (holding that the court's 'discernible relationship' requirement relaxes in light of 'extensive and repeated advertising *** in the Washington Post'). *** The degree of relatedness required in a given case is inversely proportional to the overall 'intensity of [the defendant's] forum contacts.' *See Vons*, 58 Cal Rptr 2d 899, 926 P2d at 1096-97."

*O'Connor*, 496 F3d at 319-20 (some internal citations omitted).

In considering that standard for the first time, we conclude that the amount of flexibility it allows fails to provide the "'degree of predictability to the legal system'" that the Due Process Clause requires. *O'Connor*, 496 F3d at 321 (quoting *World-Wide Volkswagen*, 444 US at 297). As a result, nonresidents are less able to "'structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit.'" *Id.* Moreover, that approach tends to reduce itself to "a free-wheeling totality-of-the-circumstances test" that conflates the separate analyses required for general and specific jurisdiction. *O'Connor*, 496 F3d at 321; *see also Dudnikov*, 514 F3d at 1078 (agreeing with Third Circuit that "the 'substantial connection' test inappropriately blurs the distinction between specific and general personal jurisdiction"). For those reasons, we conclude that the substantial connection or discernible relationship test does not offer sufficient focus to properly assess the relatedness requirement.

D.   *But-for and foreseeability of litigation test*

Finally, some courts have adopted an approach that combines a but-for test and an assessment of the foreseeability of litigation to determine the relatedness requirement. Those courts have concluded that the application of any one of the above tests is inadequate to assess whether litigation in a forum state is reasonably foreseeable by a nonresident defendant. Those courts apply a but-for test as a threshold standard and then also analyze the defendant's contacts to objectively assess the foreseeability of the pending litigation.

*O'Connor*, 496 F3d 312, is the leading case following the approach. In *O'Connor*, a patron of a Barbados hotel was injured when he slipped and fell in the hotel's spa. The patron previously had visited the hotel with his wife and subsequently received seasonal mailings from the hotel. After booking a second stay with the hotel, the hotel sent the patron a brochure advertising its spa services. Calls were then placed both to and from the hotel to arrange the

spa session that resulted in the patron's injuries. He and his wife sued the hotel for negligence in a Pennsylvania court.

The *O'Connor* court reasoned that the hotel's mailing was the but-for cause of the plaintiffs' injuries (*i.e.*, the patron purchased the spa treatment as a result of the hotel's solicitation). *Id.* at 323. The court also observed that "[t]he link [between the solicitation and the massage is] much closer than mere but-for causation." *Id.* Reasoning that Pennsylvania law permits individuals to contract and to enforce binding agreements, the court concluded that the hotel availed itself of the opportunity to make such an arrangement, and thereby created an implied promise that the hotel would exercise due care in performing the services required. The court also concluded that the plaintiffs' "claims directly and closely relate to a continuing contractual obligation that arose in Pennsylvania." *Id.* Thus, the court determined that the plaintiffs' claims related to the defendant's contacts in the forum.

In reaching that result, the *O'Connor* court observed that "[t]he animating principle behind the relatedness requirement is the notion of a tacit quid pro quo that makes litigation in the forum reasonably foreseeable." *Id.* at 322. To pay heed to that animating principle—which stems from the Supreme Court's analysis in *Burger King*—prior to a forum imposing jurisdiction, a defendant's activities must bear a meaningful relationship to the scope of the benefits and protection received from the forum state. *Id.*; *see also Burger King*, 471 US at 475-76 (out-of-state residents that conduct activities in a forum state enjoy benefits and privileges and, in exchange, must submit to jurisdiction over claims arising out of or related to those activities).

The *O'Connor* court described its approach to the relatedness requirement as grounded in the principle that a defendant's contacts in a forum state must be such that litigation in the forum is reasonably foreseeable to the defendant:

> "We thus hold that specific jurisdiction requires a closer and more direct causal connection than that provided by the but-for test. \*\*\* [T]here is no 'specific rule' susceptible to mechanical application in every case. \*\*\* The causal

connection can be somewhat looser than the tort concept of proximate causation, but it must nonetheless be intimate enough to keep the quid pro quo proportional and personal jurisdiction reasonably foreseeable."

496 F3d at 323 (internal citations omitted).

In *Oldfield*, 558 F3d 1210, the Eleventh Circuit applied the principles followed in *O'Connor* to conclude that the plaintiff's claims were not related to the defendant's forum contacts. The plaintiff in *Oldfield* brought a negligence action in Florida against the defendant, a Costa Rican corporation that owned a fishing village resort in Costa Rica, seeking to recover damages for injuries sustained on a fishing charter that he boarded while staying at the Costa Rican resort. The plaintiff had booked a vacation at the property via the Internet after discovering the defendant's website and made separate arrangements with a fishing charter service for a one-day fishing trip that ultimately led to his injuries. The plaintiff alleged that the boat captain's negligence caused his injuries and that the defendant was legally responsible for the captain's neglect.

In examining the defendant's contacts, the court noted that, in its prior case law, it had "utilized a fact-sensitive analysis consonant with the principle that foreseeability [of litigation] constitutes a necessary ingredient of the relatedness inquiry." *Id.* at 1223. The court explained that its duty in analyzing the facts before it was to examine whether the injury that the plaintiff suffered was a foreseeable consequence of his viewing the defendant's website, reserving a room at the defendant's property, and arranging a fishing trip on a vessel owned and operated by a third party. *Id.* The court reasoned that the connection between the defendant's Internet contacts with Florida and the litigation satisfied a but-for test for relatedness, but that the litigation was not reasonably foreseeable by the defendant because "the causal nexus between the tortious conduct and [the defendant's] purposeful contact" was "too remote" to provide the defendant fair warning that it could be haled into court in the forum state.[6] *Id.*; *see also Dudnikov*, 514

_____

[6] The court acknowledged that its approach to the relatedness inquiry was not a definitive test beyond the application of general principles established by

F3d at 1078-79 (commenting on quid pro quo nature of the relatedness standard and opining that the rationale of the standard is "to allow a defendant to anticipate his jurisdictional exposure based on this own actions").

We conclude that the approach adopted by the Third Circuit in *O'Connor* and the Eleventh Circuit in *Oldfield* is most consistent with the due process principles established by the Supreme Court in the area of personal jurisdiction. While we recognize that that approach is not definitive and may someday be further clarified by the Supreme Court, we believe that the other approaches we have examined present significant shortcomings. We therefore hold that the relatedness standard requires that the litigation must arise out of, or relate to, at least one of a nonresident defendant's activities in this state for our courts to properly exercise specific jurisdiction. To meet that standard, the activity may not be only a but-for cause of the litigation; rather, the nature and quality of the activity must also be such that the litigation is reasonably foreseeable by the defendant.

In summary, and based on our holding today, the inquiry as to whether specific jurisdiction exists has three aspects. First, the defendant must have purposefully directed its activities at this state. *Burger King*, 471 US at 472. Second, the litigation must "arise out of or relate to" at least one of those activities. *Helicopteros*, 466 US at 414. That particular activity must be a but-for cause of the litigation and provide a basis for an objective determination that the litigation was reasonably foreseeable. *O'Connor*, 496 F3d at 323. Finally, the exercise of jurisdiction must otherwise comport with fair play and substantial justice. *Burger King*, 471 US at 476; *Asahi*, 480 US at 113; *O'Connor*, 496 F3d at 317.

We now apply our holding to the jurisdictional facts in this case. As previously noted, our examination is limited

the Supreme Court:

> "While we do not suggest that our decision today establishes a definitive relatedness standard—as flexibility is essential to the jurisdictional inquiry—we do find that the fact-sensitive inquiry must hew closely to the foreseeability and fundamental fairness principles forming the foundation upon which the specific jurisdiction doctrine rests."

*Oldfield*, 558 F3d at 1224 (citations omitted).

to whether this litigation arose out of or is related to defendant's activities directed at Oregon.

E.  *Application*

Plaintiff's injury occurred in Wyoming as the result of negligent repairs that allegedly occurred in Idaho. Plaintiff alleged that defendant was negligent in failing to properly diagnose and repair the front-end problem on her motorcycle, failing to contact Harley-Davidson for repair instructions or to instruct its employees on proper repairs, and failing to notify plaintiff that her motorcycle could continue to have a high-speed "wobble." Those activities all occurred at defendant's repair shop in Idaho.

Defendant did, however, advertise the sale of Harley-Davidson motorcycles, the sale of motorcycle parts and accessories, repair services it offered, and promotional events on a website accessible to Oregon customers and customers worldwide. While situated in Oregon, plaintiff may have become familiar with defendant's dealership in part as a result of defendant's website. Although defendant's website was interactive—*i.e.*, it allowed customers to place specific orders, plaintiff did not submit a website order for the repair services defendant provided in this case. Stated differently, plaintiff did not contact defendant's dealership from Oregon and defendant did not make any implied promises to plaintiff in Oregon as a result of the website. Thus, defendant's activity in Oregon as relevant to plaintiff's cause of action boils down to its generalized website promotions.

With those facts in mind, we first observe that the question of whether defendant's website activity is a but-for cause of this litigation is not free from doubt. Although plaintiff may have become familiar with defendant's dealership as a result of defendant's website, she also had previously visited defendant's dealership in Idaho, and may have become familiar with defendant's dealership through friends and an independently distributed Harley-Davidson handbook. We need not decide, however, whether, but for defendant's website advertising, plaintiff would not have had her motorcycle repaired at defendant's Idaho dealership. That is so because whether or not there is but-for causation in this

case, defendant's contacts in Oregon were not such that it was reasonably foreseeable that defendant would be sued in Oregon for repairs it provided to plaintiff in Idaho.

In particular, plaintiff did not secure defendant's services when she was in Oregon; she did so when she was travelling through Idaho during a multistate tour and when, fortuitously, her motorcycle broke down there and required repairs. Moreover, the nexus between defendant's Internet advertising in Oregon and its allegedly negligent repairs in Idaho is remote. *See Oldfield*, 558 F3d at 1223. Thus, the relationship between defendant's contacts and this litigation is tenuous. Under such circumstances, we cannot say that defendant's contacts in Oregon were such that it was reasonably foreseeable that defendant would be sued in Oregon for repairs it undertook in Idaho.

## III.   CONCLUSION

We hold that plaintiff's claims did not arise out of or relate to defendant's activities in Oregon in a manner that allows our courts to exercise specific jurisdiction over defendant under ORCP 4 L. Because plaintiff has failed to establish that her litigation related to defendant's forum activities, we need not determine whether the exercise of jurisdiction by Oregon courts would comport with fair play and substantial justice. *See Asahi*, 480 US at 113 (discussing that standard).

The decision of the Court of Appeals and the judgment of the circuit court are affirmed.